ROSE ANNA BEAUVAIS, executrix, *vs.* SPRINGFIELD
INSTITUTION FOR SAVINGS.

Hampden.   March 9, 1939. — May 5, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & RONAN, JJ.

*Landlord and Tenant,* Landlord's liability to tenant or his family or his invitee, Heating apparatus. *Negligence,* One owning or controlling real estate, Violation of law, Independent contractor, Heating apparatus, Contributory, Causing death. *Practice, Civil,* Judgment. *Words,* "Use."

Evidence of the relations between the owner of a building containing three stores and a tenant at will of one of the stores who, in addition to paying a monthly rental, performed such janitor services as were necessary respecting an oil burner and heating plant located in the basement under his store and used to heat all the stores, warranted

findings that the owner retained supervision and control of the burner for the purpose of seeing that it was installed and maintained in proper mechanical condition, that such undertaking of the owner was not gratuitous and that he was liable for injuries to and the death of the tenant resulting from ordinary negligence in the performance of such undertaking.

Evidence that a defect in an oil burner, which resulted in injury to one employed to do janitor service respecting it while the owner had supervision and control of it, resulted from violation of rules and regulations of the department of public safety and from a substitution of a less effective safety device, warranted a finding of negligence of the owner toward the employee.

The facts, that one employed to do janitor work with respect to an oil burner, upon opening the door of the burner to see why it would not start by use of the thermostat, was injured by an explosion which occurred, and that use of the burner was in violation of rules and regulations of the department of public safety prohibiting the installation, maintenance and "use" of unapproved burners, did not require a finding that the employee's injury was due to his unlawful use of the burner, or to contributory negligence on his part.

In an action by an administrator with a count for conscious suffering and a count for causing death, there should be a separate verdict and a separate judgment on each count.

TORT. Writ in the Superior Court dated January 14, 1936.

Before *Baker*, J., verdicts for the plaintiff were recorded, with leave reserved, in the sum of $7,910 upon the count for causing death and in the sum of $18,000 on the count for conscious suffering; and afterwards the judge ordered verdicts for the defendant entered.

*C. E. Drapeau*, (*S. Saltman* with him,) for the plaintiff.

*H. P. Small & C. R. Brooks*, for the defendant, submitted a brief.

RONAN, J. The defendant became the owner in June, 1932, of a building consisting of three stores. In the basement of one of these stores was located a central heating plant which furnished heat to the entire building. This store was occupied by the testator, who conducted a drug store. He was a tenant at will, paying a monthly rental, "and in addition performed such janitor services and supervision as was necessary for the heating plant, including setting the thermostat, maintaining the water level, ordering oil, and paying for such electrical energy as was used

to operate the plant." This arrangement continued up to the time of the accident. The defendant contracted with one Harrington to install a used burner of a certain type of designated manufacture for a lump sum. The contract was completed on December 12, 1933. The burner was inspected by the manager of the defendant's real estate department to see that it complied with the contract. It was paid for by the defendant on December 18, 1933, and was continued in operation until the accident on March 13, 1934. This burner had been previously used in a church and was too large for the defendant's premises. Harrington removed the high speed motor and put in its place the low speed motor which had been located in another part of this burner; he changed the nozzle, which was adapted to a burner consuming fifteen gallons of oil an hour, to one designed for a burner using two and one half gallons; he eliminated the master control, which was a safety device for stopping the burner when the flow of oil was interrupted or when oil was being fed without being ignited, and substituted for it, in the stack of the heater, an appliance to accomplish the same purpose. There was evidence that the master control, which was placed in the combustion chamber, would act more quickly than a stack control whose operation depended upon the amount of heat generated by the gases escaping to the chimney, but that the stack control could be properly adjusted and timed to furnish an efficient safeguard. The burner actually furnished differed materially from the one mentioned in the contract with Harrington, and the defendant's agent should have discovered this when he inspected the work before paying the bill. The testator soon after opening his place of business on the morning of March 13, 1934, was unable to start the burner by adjusting the thermostat. He went down stairs and opened the door of the boiler; an explosion, caused by the accumulation of gas in the boiler from oil that had failed to ignite, resulted, emitting "a terrible fire," throwing the testator down, and burning him so severely that he died after several days of conscious suffering. Verdicts in favor of the plaintiff for conscious

suffering and for death were set aside, leave having been reserved, and verdicts were ordered for the defendant, subject to the plaintiff's exceptions. There was considerable conflict in the testimony but we have narrated the evidence in the light most favorable to the plaintiff, in accordance with the rule established in this Commonwealth in determining the correctness of the action of the trial judge in directing verdicts for the defendant.

The defendant contends that the testator was a tenant at will; that the heating system was a part of the demised premises and was under the sole control of the tenant; that the defendant was not obliged by contract to repair the heater; that if it did install another burner such act was a gratuitous undertaking which might ordinarily entail liability for personal injury if it were shown that the defendant had been grossly negligent, and for death if it were shown that the defendant had failed to exercise ordinary diligence; that in the present case the defendant did not incur liability for the reason that an independent contractor, in whose selection there was no negligence, performed the contemplated work, which was of such a nature that it did not constitute a nuisance or necessarily bring to pass injuries to persons or property if proper precautions were taken.

The jury could find that the boiler and burner, both being located in the basement of the drug store, were parts of a single heating system installed and maintained for the purpose of furnishing a supply of heat not only to the drug store but also to the other stores that comprised the property of the defendant. It is reasonable to infer, in the absence of the terms under which the other stores were let, that, if they were to be occupied, adequate heating must be secured. It is plain that the heating system was maintained not only for the benefit of the testator but also for the advantage of the defendant. It was a matter not only of convenience but of mutual arrangement that the tenant of the drug store, where the thermostat regulating the operation of the system was located, should attend to the heater in accordance with the terms of the contract be-

tween him and the owner. Other than paying for the electricity consumed, he could have been found, as stated in the defendant's answers to interrogatories, to have been performing janitor's service incidental to his tenancy relative to the heater. His contract, however, did not obligate him to repair the burner or to maintain it in proper mechanical and electrical condition. *Calabresa* v. *Lynch*, 271 Mass. 58. The jury could find that the defendant had contracted with the testator and with the other tenants to furnish heat to the stores; that in pursuance of this obligation it installed the burner on December 12, 1933, under a contract which required the vendor to furnish for the contract price "a one year service and parts guarantee"; that the vendor, subsequently to the installation of the burner and prior to the accident, had made two service inspections, found the burner working properly, and made no repairs; that the defendant kept a record of complaints concerning its real estate; that there were no complaints made to the defendant with respect to this burner but, if there had been, it would have notified Harrington, who, after remedying the defect, would send a bill showing no charges, as such repairs would come within his guaranty of service; and that, after the accident, the defendant sent for Harrington, who removed the burner, tested it, dried out portions of it that had become damp on account of water used in extinguishing the fire, and replaced it on the property at the expense of the defendant. Such evidence would warrant a finding that the defendant had retained the supervision and control of the burner for the purpose of seeing that it was installed and maintained in proper mechanical condition, and that it did so not as a matter of a gratuitous undertaking but in pursuance of a contract with its tenant which required the defendant to exercise reasonable care and diligence in its performance, *Feeley* v. *Doyle*, 222 Mass. 155; *Withington* v. *Rome*, 258 Mass. 188; *Lischner* v. *Hahn*, 273 Mass. 259; *Connery* v. *Cass*, 277 Mass. 545; *Cleary* v. *Union Realty Co.* 300 Mass. 312, and the fact that the burner was located upon the demised premises is not decisive. *Priest* v. *Nichols*, 116 Mass.

401.   *Hilden* v. *Naylor*, 223 Mass. 290.   *Kendall* v. *Tash-jian*, 258 Mass. 377.   *Brindis* v. *Haverhill Morris Plan Co.* 266 Mass. 303.   *Devine* v. *Lyman*, 270 Mass. 246.

. It is to be noted that the guaranty that Harrington gave to the defendant not only required him to service the burner for a year after its installation but also included a "parts guarantee." Such an arrangement was evidence that the defendant had retained control of the burner for the purposes of supervising its ordinary and usual operation and of having repairs made, at least in so far as such repairs consisted in the substitution of new parts for those that were shown to have been defective when the burner was installed. *Perkins* v. *Rice*, 187 Mass. 28.   *Baum* v. *Ahlborn*, 210 Mass. 336.   *Lekarczyk* v. *Dupre*, 265 Mass. 33.

If the shut-off device, which the jury could find Harrington had put into the stack and had substituted for the master control furnished by the manufacturer of the burner as a part of the standard equipment of that type of burner, was not properly timed, the burner would continue to operate unsafely by "pumping oil in a boiler without fire, that didn't ignite," and an explosion might result from an accumulation of oil gases. The rules and regulations of the department of public safety made in accordance with G. L. (Ter. Ed.) c. 148, § 10, forbid the installation of a fuel oil burner without a permit from the State fire marshal or, in case the building is used for habitation, from the head of the local fire department. They also provide that "No fuel oil burner shall be installed, maintained or used in any building. . .-. unless the burner has been approved, and no change shall be made in any such burner unless such change has been approved. Every approved burner shall have affixed thereto a metal tag certifying that the burner has been approved by the State fire marshal, . . . and said tag shall also bear the name and the number of approval as issued by the marshal." There was evidence that no permit had been secured for the installation of this burner until after the accident, and that the burner as changed had never been approved by the fire marshal. It was for the jury to determine whether the burner was unsafe and

dangerous or whether it had been negligently installed by the defendant. If they found that its installation was contrary to the provisions of the rules and regulations of the department and that the violation contributed to the accident, then they could consider such violation as evidence of negligence. *Finnegan* v. *Winslow Skate Manuf. Co.* 189 Mass. 580. *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501. *Milbury* v. *Turner Centre System,* 274 Mass. 358. *McKenna* v. *Andreassi,* 292 Mass. 213. The fact that the work had been done by an independent contractor, whose skill and efficiency were disclosed by the evidence, was material upon the care of the defendant in the installation of the burner. *Levesque* v. *Hildreth & Rogers Co.* 276 Mass. 429. But the work had been completed three months before the accident, and it was a question for the jury under appropriate instructions, which we assume were given, to determine whether, in the exercise of due care, the defendant knew or ought to have known that the burner was unsuitable and improper or that its further operation should be discontinued until it could be made reasonably safe and the approval required by law obtained from the State fire marshal. *Khron* v. *Brock,* 144 Mass. 516. *Kelley* v. *First National Bank of Boston,* 281 Mass. 169. *Hunt* v. *Lane Brothers Co.* 294 Mass. 582. Am. Law Inst. Restatement: Torts, § 420.

It could have been found that Harrington knew that the burner had not been approved. Whether the defendant upon the testimony, which need not be narrated, was negligent in selecting Harrington to make the inspections of the burner after its installation, and was acting reasonably in relying upon such inspections as he made, were also questions of fact. There was testimony that several weeks before the accident an employee in the store of one of the tenants complained to the testator about lack of heat, and was told "that the boiler itself was out of commission," but it did not appear definitely whether this was before or after Harrington had set up the burner. If the defendant furnished a burner that would cause oil to accumulate in the fire box and to generate inflammable gases which, upon the

opening of the door of the boiler, would ignite and explode, then it may be held liable, even though the particular events leading up to the accident were unusual and peculiar, provided that the danger from an accumulation of oil ought reasonably to have been anticipated and guarded against. *Dulligan* v. *Barber Asphalt Paving Co.* 201 Mass. 227. *Ogden* v. *Aspinwall,* 220 Mass. 100. *Vigneault* v. *Dr. Hewson Dental Co.* 300 Mass. 223. *Marshall* v. *Carter,* 301 Mass. 372.

A landlord who is required by law to exercise due care toward a tenant in respect to certain matters, of course is liable for his positive acts of misfeasance as to such matters that result in injuries to the tenant. *Riley* v. *Lissner,* 160 Mass. 330. *Hunter* v. *Goldstein,* 267 Mass. 183, 184, 185. *Rudomen* v. *Green,* 299 Mass. 485.

It could not be ruled that the affirmative defence of contributory negligence had been sustained. The regulation of the department prohibited the installation, maintenance or use of an unapproved burner. If at the time of the accident the testator, with the defendant, was participating in the illegal maintenance or "use" of the burner and his injuries and death directly resulted from such conduct, then the plaintiff is not entitled to recover, *Dean* v. *Boston Elevated Railway,* 217 Mass. 495, even if the testator was acting innocently and without knowledge that the use of this appliance had not been sanctioned by the fire marshal. *Commonwealth* v. *Mixer,* 207 Mass. 141. Relief is denied not so much as a shield to a defendant whose violation of law has resulted in an injury to another, but because the court will not enforce a cause of action founded upon a breach of the law. *Szadiwicz* v. *Cantor,* 257 Mass. 518. *Baskin* v. *Pass,* 302 Mass. 338. There was no evidence as to the manner in which the accident occurred other than a statement made by the testator to the nurse who attended him at the hospital, to the effect that, as he opened the door of the boiler to discover the reason for the burner not starting, the explosion happened. It was a question of fact whether such conduct constituted a "use" of the burner or whether it was too remote from the

operation of the burner and was more in the nature of an investigation preparatory to an attempt to put the burner into actual use. The opening of the door was not a means for starting the mechanism. *Labrecque* v. *Donham*, 236 Mass. 10, 16. *Norcross* v. *B. L. Roberts Co.* 239 Mass. 596. It was the intention of the regulation to prohibit the use and maintenance of an unapproved burner for the purpose of generating heat, and while it is conceivable that the term "use" might include more than the operation of the burner, *Cook* v. *Crowell*, 273 Mass. 356; *Cahill's Case*, 295 Mass. 538, yet it must be construed in the light of the predominating aim and object of the regulation and be limited to conduct that amounts to or is proximately related to the actual utilization of the burner for its ordinary and usual purpose. Whether the opening of the door by the testator in an effort to discover anything that might have prevented the starting of the burner, when it was not shown that he could or would remedy the difficulty, if one were found, could be said to be in furtherance of the maintenance of the burner, presented an issue of fact. *Commonwealth* v. *Galligan*, 144 Mass. 171. *Davis* v. *Rich*, 180 Mass. 235. It was also for the jury to determine, if they found he was using or maintaining the burner at the time of the accident, whether the absence of the approval of the marshal was a mere circumstance or attending condition, or an efficient cause of the explosion. *Stowe* v. *Mason*, 289 Mass. 577. *Scranton* v. *Crosby*, 298 Mass. 15. *Thibault* v. *Nicholas Zeo, Inc.* 301 Mass. 478. The defendant, under its answer alleging contributory negligence, could introduce evidence that the testator was engaged in an illegal act at the time of the accident for the purpose of showing such negligence, *Herman* v. *Sladofsky*, 301 Mass. 534, but the burden of proof of illegality, whether for the purpose of showing unlawful or negligent conduct, was upon the defendant. *Conroy* v. *Mather*, 217 Mass. 91. *Brewer* v. *Hayes*, 285 Mass. 144. The mere violation of the regulation, if proved, was not negligence *per se* but was only evidence of negligence, which the jury could consider together with the rest of

the testimony and then decide if the defendant had proved contributory negligence upon the part of the testator. It can rarely be said as matter of law that an affirmative defence, resting entirely upon oral evidence, has been sustained. *Giles* v. *Giles*, 204 Mass. 383. *Donahue* v. *Leventhal*, 302 Mass. 393.

The plaintiff's exception to the denial, after a hearing, of her motion to strike from the files the defendant's motion for a new trial, on the ground that no copy of the said motion was furnished to the plaintiff within the time prescribed by Rule 54 of the Superior Court (1932), shows no error in the absence of evidence or requested rulings. *Commonwealth* v. *McIntosh*, 259 Mass. 388. *DeFilippo* v. *DiPietro*, 265 Mass. 186.

The jury found for the plaintiff upon the first count for conscious suffering, which was based upon the gross negligence of the defendant in the installation of the burner, and they also found for the plaintiff upon the second count for the death of the testator, which was predicated upon the negligent installation of the burner. The evidence is insufficient to support an allegation of gross negligence, *Harvey* v. *Crane*, 238 Mass. 571; *Bell* v. *Siegel*, 242 Mass. 380; *Sullivan* v. *Northridge*, 250 Mass. 270, but in view of the finding of ordinary negligence upon the second count, which we think was warranted, the jury would undoubtedly have come to the same conclusion on the first count if it had been based simply upon such negligence, which was all that it was necessary to prove in order to recover. The verdict for the plaintiff upon the second count was free from error and her exception to the ordering of a verdict for the defendant is sustained. Her exception to the ordering of a verdict upon the first count is overruled, unless a motion to amend the first count to its original form, alleging ordinary negligence, is allowed within sixty days after rescript, in which event the verdict returned by the jury on the first count is to stand.

Under the common law and under our practice there can ordinarily be but one final judgment in an action at law, *Leonard* v. *Robbins*, 13 Allen, 217; *Contakis* v. *Flavio*,

221 Mass. 259, 261; *New York Trust Co.* v. *Brewster*, 241 Mass. 155, 163; *Brooks* v. *Davis*, 294 Mass. 236, 248, but the Legislature may authorize the joinder of different causes of action in a single action at law and provide for the rendition and entry of separate judgments. See G. L. (Ter. Ed.) c. 231, §§ 2, 4; *Merchants' Ins. Co.* v. *Abbott*, 131 Mass. 397, 407; *Taft* v. *Church*, 162 Mass. 527, 533; *Rossi Bros. Inc.* v. *Commissioner of Banks*, 283 Mass. 114, 120. An action for conscious suffering and for death arising out of the same wrongful act cannot be joined in a single action without an enabling statute. *Brennan* v. *Standard Oil Co. of New York*, 187 Mass. 376. *Manning* v. *Conway*, 192 Mass. 122. G. L. (Ter. Ed.) c. 229, § 6, provides for the recovery of damages under a separate count at common law for conscious suffering in actions brought under G. L. (Ter. Ed.) c. 229, §§ 3, 5, to recover damages for death. The effect of the original statute, St. 1911, c. 31, permitting the joinder of such counts in actions brought for death under what is now G. L. (Ter. Ed.) c. 229, § 5, was stated in these words in *Gilpatrick* v. *Cotting*, 214 Mass. 426, 427: "But we think that the effect of the amendment was and is to do away with the necessity of bringing two separate actions and to allow a count for conscious suffering at common law to be joined to a count for death under the statute and the recovery of damages under each with like effect as if two separate actions had been brought. By the addition of the count for conscious suffering what was before an action for death alone becomes in effect two actions joined in one with the right of recovery limited in the count for death to the amount established by the statute, and with no limit in the other count except that fixed by the rules of the common law." It was recently stated by this court in *Finnegan* v. *Checker Taxi Co.* 300 Mass. 62, 69, that "Notwithstanding the joinder, there were two separate causes of action stated in the declaration." This necessarily follows from the difference in the nature of a count for conscious suffering and one for death. In the former, the personal representative is pursuing a common law

right to recover damages which are to be awarded upon the basis of compensation and when collected become assets of the estate, while, in the latter, the personal representative is enforcing a statutory remedy to recover damages which are assessed in accordance with the degree of culpability and are to be paid to the surviving spouse and children or other kindred. The executor or administrator acts in different capacities for the benefit of different persons. *McCarthy* v. *William H. Wood Lumber Co.* 219 Mass. 566. *Porter* v. *Sorell*, 280 Mass. 457. *Macchiaroli* v. *Howell*, 294 Mass. 144. The identity of each count is observed. A release given by the intestate may bar an action for conscious suffering but not the count for death, and an admission by the intestate would be competent evidence against his estate, but not (unless shown to be the declaration of a deceased person under G. L. [Ter. Ed.] c. 233, § 65) against the statutory beneficiaries. *Wall* v. *Massachusetts Northeastern Street Railway*, 229 Mass. 506. *Eldridge* v. *Barton*, 232 Mass. 183. While G. L. (Ter. Ed.) c. 229, § 6, does not in terms provide for separate judgments as does G. L. (Ter. Ed.) c. 231, §§ 2, 4, yet it does prescribe in reference to the damages recovered on the count for conscious suffering that "any sum so recovered shall be held and disposed of by the executors or administrators as assets of the estate of the deceased." It is plain that the damages which are recovered by a plaintiff acting in different capacities for different persons in enforcing two distinct and different causes of action are to be segregated and are to be paid to the estate and to the statutory beneficiaries in the amounts determined by the verdicts. The statute permitting the joinder is remedial and should receive a liberal construction, *Bartley* v. *Boston & Northern Street Railway*, 198 Mass. 163; *Howard* v. *Fall River Iron Works Co.*, 203 Mass. 273, and its aim and intent would be best accomplished by separate judgments following and conforming to the verdicts. The nature of the action is such that a general verdict cannot be entered. The authority to include both causes of action in a single action at law, coupled with the provision that the amounts

received under each count are to be kept separate, carries with it the incidental power of employing the ordinary means to accomplish the intended result. *Providence & Worcester Railroad* v. *Norwich & Worcester Railroad*, 138 Mass. 277. *Fluet* v. *McCabe*, 299 Mass. 173, 178. *Acford* v. *Auditor of Cambridge*, 300 Mass. 391, 395. *Lewis* v. *Bricker*, 235 Mich. 656.

Judgments are to be entered in accordance with this opinion, unless the verdicts are set aside or reduced upon the motion for a new trial, which is now pending. *Fuller* v. *Andrew*, 230 Mass. 139. *Mitsakos* v. *Morrill*, 237 Mass. 29.

*So ordered.*