**BAIRD**

v.

**ELLSWORTH REALTY CO.**

No. 21946.

Kansas City Court of Appeals.

Missouri.

March 1, 1954.

Anthony J. Miceli, Lawrence W. Saeger, Kansas City, for appellant.

Richard P. Sprinkle, Sprinkle, Knowles & Carter, Kansas City, for respondent.

CAVE, Presiding Judge.

This is an appeal from a judgment for plaintiff in the sum of $1,000 because of property damage suffered when steam escaped from a pipe in the apartment occupied by plaintiff and owned by defendant. This suit originated in the magistrate court, and the statement filed by plaintiff is substantially as follows: .

Paragraph 1 of the statement alleged that the defendant owned and operated a certain apartment building in Kansas City, which building was heated with steam; paragraph 2 alleged that plaintiff occupied one of said apartments and that prior to his occupancy the radiator in plaintiff's bedroom was removed by defendant; paragraph 3 alleged that on a certain date a fire was built in the furnace of said apartment building and steam was permitted to pass through the pipe into the rooms occupied by plaintiff; that plaintiff was away at the time and the steam bleached plaintiff's furniture, saturated his clothing and damaged his other property therein; paragraph 4 alleged that the aforesaid condition was known to the defendant, and that defendant negligently failed to warn plaintiff or to remove the open pipe in plaintiff's bedroom, and as a result, his property was damaged in the sum of $1,000.

Defendant did not file answer in the magistrate court, but a trial was had resulting in a verdict and judgment for plaintiff in the sum of $1,000, and defendant appealed to the circuit court. Thereafter, defendant filed answer admitting the allegations of paragraphs 1 and 2 of the statement, but denied the allegations in paragraphs 3 and 4, and alleged that whatever damage plaintiff had suffered was due to his negligence.

The trial in the circuit court before a jury resulted in a verdict and judgment for plaintiff in the sum of $1,000, and defendant appealed.

Defendant's first contention is that the court erred in overruling its motion to dismiss the case at the close of plaintiff's evidence, because (a) the statement fails to state a claim upon which relief can be granted, and (b) that the evidence was insufficient to establish liability on the part of the defendant.

This cause originated in the magistrate's court where formal pleadings are not required, Section 517.050 RSMo 1949, V.A.M.S. It is uniformly held that pleadings originating in a magistrate's court are to be liberally construed, and if the pleading is sufficient to advise the defendant of the nature of the claim, and is sufficiently specific to bar another action thereon, then it cannot be said that the statement wholly fails to state a cause of action. Brown v. Clark's Estate, Mo.App., 207 S.W.2d 530. There was no motion filed attacking the sufficiency of the statement until the close of plaintiff's evidence. We think the statement is sufficient under the above rule.

Concerning the assignment that the court erred in not sustaining defendant's motion for directed verdict at the close of plaintiff's evidence, it is sufficient to say that defendant waived this point by introducing evidence on its behalf. Smith v. Thompson, Mo.App., 258 S.W.2d 278; Hieber v. Thompson, Mo.App., 252 S.W.2d 116.

Defendant's next contention is that the court erred in overruling its motion for directed verdict at the close of all the evidence because there was no substantial evidence to establish legal liability against the defendant. This necessitates a statement of the evidence.

Defendant's answer admits that it was the owner and operator of this apartment building; that plaintiff was a tenant in one of the apartments; and that prior to October 21, 1949, the date of the alleged damage, defendant removed a radiator from the bedroom. There is no conflict in the evidence that defendant's janitor built a fire in the furnace which was used to heat the various apartments in the building; that steam escaped into plaintiff's apartment from a pipe connected with the furnace, and that his property was damaged.

The point of controversy is whether there was sufficient evidence to submit the issue of defendant's negligence in permitting the steam to escape into the apartment.

Plaintiff testified that he and his wife and small child moved into the apartment about six weeks prior to the loss in question; that he did not personally move the furniture, but employed another to do so; that the landlord was to furnish heat to the apartment; that he did not know the radiator in the bedroom had been removed and had not observed the pipe from which the radiator had been removed; that the janitor, defendant's employee, had control over the heating equipment in the building; that on October 21, the plaintiff and his wife drove to Chillicothe for a weekend visit and while there received a telephone call from a neighbor and returned to their apartment and found that steam had escaped from the pipe where the radiator had been removed and his property damaged; that one of the neighbors had turned the steam off; that he then noticed the pipe for the first time; that the end of the pipe was not capped but there was a "knob" near the end of the pipe; that the janitor tightened this "knob" and they had no further trouble from escaping steam. It is conceded that the "knob" referred to by the plaintiff was in fact a "shut-off valve".

Plaintiff's wife testified that she had observed the pipe when they moved into the apartment but that she knew nothing about such matters and did not know that a radiator had been removed therefrom, or that the pipe was connected with the furnace; that the janitor told her that they should not turn the radiators on and off, that it made the pipes in the building shake, and that he would turn them on and off; that she did not touch the valve on the pipe; that after the janitor tightened it, subsequent to the damage, no steam escaped; that as far as she knew, there had not been a fire built in the furnace after they moved in until the time of this occurrence; that the pipe was located in the corner of the bedroom, and that when they moved in she placed a vanity bench over the end of the pipe and that the bench remained there during the time they occupied the apartment; that when they left for Chillicothe the weather was rainy and cloudy; and that she would have expected the landlord to turn the heat on if it got cold enough.

Defendant introduced evidence from experienced apartment house managers that it is not the practice to notify tenants when the heat will be turned on; that when a radiator is removed, it is not customary to "cap" the end of the pipe, but rather tighten the "shut-off valve" which is located near the end of the pipe; that if this valve is tight, steam cannot escape therefrom, but that if it is "pretty well open", steam will escape. Mr. Ellsworth testified that he was one of the managers of the apartment building and that he was in the apartment sometime prior to plaintiff moving into it; that he observed that the radiator in the bedroom had been removed and that he turned the control valve off; that it takes two or two and a half turns to close the valve if it is wide open; that he had instructed the janitor to burn trash in the furnace and that such had been done frequently prior to the day in question, and that when a substantial amount of trash is burned it will cause a half a pound or pound of steam to be generated which would have caused steam to escape into plaintiff's apartment if the valve had been open.

Mr. Meierhoffer testified that he had an interest in the defendant company and assisted in the management of the apartment building; that he went to the apartment sometime after the loss and found that the valve in question was tightened and that no steam could escape; and that heat is turned on in the building without notice to tenants whenever the weather requires it.

■ The parties cite many authorities concerning the obligations and duties owed the tenant by the landlord. Some of those cases are concerned with the liability of the landlord by contract, but they have no application to the facts in the instant case. Two rather recent decisions of the Supreme Court discuss at length the liability, in tort, of the landlord to the tenant, and many of the cases in this state are reviewed in those opinions. They are: Bartlett v. Taylor, 351 Mo. 1060, 174 S.W.2d 844; and Roach v. Herz-Oakes Candy Co., 357 Mo. 1236, 212 S.W.2d 758. It is unnecessary for us to review the various circumstances under which the landlord would be liable in *tort* to the tenant. In both of the above cases the court recognizes the rule which we think is applicable to the facts of the present case. It is, 351 Mo. 1069, 174 S.W.2d 849: "A lessor of land, who conceals or fails to disclose to his lessee any natural or artificial condition involving unreasonable risk of bodily harm to persons upon the land, is subject to liability * * *, if (a) the lessee does not know of the condition or the risk involved therein, and (b) the lessor knows of the condition and realizes the risk involved therein and has reason to believe that the lessee will not discover the condition or realize the risk." Citing many authorities. This principle is referred to by many text writers and courts as an exception to the general rule that a tenant accepts the property as he finds it. Burton v. Rothschild, 351 Mo. 562, 566, 173 S.W.2d 681.

■ Defendant concedes that it removed the radiator before the plaintiff moved into the apartment; and it is undisputed that steam escaped from the pipe from which the radiator had been removed. Plaintiff and his wife testified that they did not know that the valve was not securely closed; that neither of them had touched or in any way disturbed the valve after they moved in; that, to their knowledge, there had not been a fire built in the furnace sufficient to produce steam prior to the day of the damage; that the janitor, defendant's employee, tightened the valve and that there was no further escape of steam. These facts support the inference that defendant did not securely tighten the valve when it removed the radiator. It is true defendant's manager, Ellsworth, testified that he inspected the apartment before plaintiff moved in, and had securely tightened the valve, but the jury was at liberty to disbelieve this statement.

■ We believe the evidence is sufficient to support a finding that the condition in which the exposed pipe was left by defendant involved an unreasonable risk to the tenant; that the tenant did not know of the condition or the risk involved and that the landlord did know of the condition and realized, or should have realized, the risk involved and should have anticipated that the tenant would not discover the condition. It is conceded that the defendant did not disclose the condition to the tenant.

Defendant places great reliance on Maryland Casualty Co. v. Mercantile Commerce Trust Co., Mo.App., 122 S.W.2d 23. The evidence in that case makes it inapplicable to the factual situation in the instant case. For example, the court said, 122 S.W.2d 26: "* * * there is no evidence tending to show that leaving the end of the pipe, * * * uncapped, was negligence, but to the contrary plaintiff's evidence was to the effect that when the radiator was removed the radiator valve was left in place; which would prevent the escape of steam from the pipe unless the radiator valve was open." In the instant case, we think the evidence supports the inference that the valve was left open by defendant when it removed the radiator. Other cases cited by defendant are to be distinguished, either on the facts or on the theory of the landlord's liability.

It is our conclusion that the court did not err in overruling defendant's motion for directed verdict at the close of all the evidence.

■■ Defendant strenuously argues that plaintiff was guilty of contributory negligence as a matter of law. This argument is based on the general proposition that (unless there is a contract specifically providing otherwise), a tenant "takes the property as he finds it, with all existing defects which he knows or can ascertain by reasonable inspection". The exposed pipe was in the corner of the only bedroom in the apartment, which was vacant at the time plaintiff moved in. He stated that he did not observe the pipe at that time, or at any other time prior to the date of the damage; that when the furniture was moved in by others, a vanity bench was placed over the pipe and remained there during the tenancy. Plaintiff's wife did notice the pipe, but knew nothing about its use or its defects, and said nothing to the plaintiff or the defendant about the presence of the pipe. Plaintiff and his wife occupied the apartment approximately six weeks before the date of damage. Even if it be conceded that plaintiff did, or by the exercise of ordinary care could have seen, the pipe, that would not make him guilty of contributory negligence as a matter of law under the facts in this case, because merely observing the existence of the pipe would not disclose to plaintiff the danger existing as a result of the valve not being securely tightened. Whether he should have made a closer inspection of the pipe and determined whether it had been properly "plugged" or the "safety valve" securely tightened, we believe would be a question for the jury. In other words, if plaintiff used that care which an ordinarily careful and prudent person would use under like circumstances, he was not guilty of contributory negligence as a matter of law. That issue was submitted to the jury.

■■ The defendant also urges that the verdict and judgment are against the greater weight of the evidence and are contrary to law. This court cannot weigh the evidence if it is sufficient to make a submissible issue for the jury, and we have held there is sufficient evidence in this case. What we have said disposes of the argument that the verdict and judgment are contrary to the law.

■■ It is also urged that there was no proper measure of damages established to support the judgment. The plaintiff and his wife described in detail the effect the steam and water had on the furniture, rugs, clothing and other property located in the apartment. Plaintiff testified that the reasonable market value of the property before the loss was $1,600 and the market value thereafter was $600, and that he expended $150 in getting certain property cleaned and refurbished. Defendant concedes that the proper measure of damages is the reasonable market value before and after the occurrence. Defendant seems to think that there should have been evidence from a furniture expert concerning the value of the property before and after the damage. We do not understand that to be the law. The law seems to be that an owner of property, without further qualification, may testify to its reasonable market value, and the jury determines the weight and value of such testimony. State ex rel. Spears v. McCullen, 357 Mo. 686, 210 S.W.2d 68, 72; Finn v. Indemnity Co. of America, Mo. App., 297 S.W. 175, 176; Grath v. Wilson Motor Car Co., Mo.App., 253 S.W. 776; Golden v. Heman Construction Co., 100 Mo. App. 20, 71 S.W. 1093.

■■ Defendant made no complaint in its motion for new trial that the court erred in giving instructions, and that question is not before us.

Finding no reversible error, the judgment is affirmed.

All concur.