Pamela Sue THOMPSON, a minor, by next
friend, Martin Scott Thompson,
Plaintiff-Appellant,

v.

PASEO MANOR SOUTH, INC., Defendant-
Respondent.

No. 22862.

Kansas City Court of Appeals.

Missouri.

Dec. 7, 1959.

Irving Kuraner, Robert G. Oberlander, Kuraner, Freeman, Kuraner, Oberlander & Lamkin, Kansas City, for appellant.

Thomas E. Deacy, Jr., Edward W. Mullen; Deacy & Deacy, Kansas City, for respondent.

CAVE, Presiding Judge.

This is an action for damages for personal injuries sustained by plaintiff, Pamela Sue Thompson, who was 22 months of age at the time of the incident in January, 1953, and who prosecutes her action through Martin Scott Thompson, her father and next friend.

The Thompson family were tenants in an apartment building located in Kansas City. The building contained 80 individual apartments. The one occupied by the Thompsons was No. 307. The defendant, a corporation, owned the building and was the landlord of the Thompsons.

The underlying legal question in the case is one of a landlord's liability to a member of his tenant's family for injuries attributable to the alleged dangerous condition of certain unprotected steam pipes located in, as well as passing through, the apartment occupied by the Thompsons.

Upon trial to a jury, a verdict was returned in favor of the defendant and, following an unavailing motion for new trial, plaintiff perfected her appeal.

The defendant owned and operated the apartment building, which was constructed in about 1948, and contained about 80 separate apartments. There was a central heating unit in the basement which supplied steam heat through pipes to the various apartments. This was done by vertical pipes extending from the heating unit through the various apartments to the top floor; and in each apartment there were attached lateral pipes extending to and carrying heat for radiators. The vertical and lateral pipes were located close to the wall, but both were uninsulated or unenclosed in any manner, which fact gives rise to this controversy. All the evidence discloses that when the heating unit is in use, these exposed pipes become very hot and will burn a person coming in contact therewith.

The Thompsons, under an oral month to month lease, had lived in this apartment from October, 1951, until about January, 1953, at which time the infant plaintiff, in the nighttime, fell from her bed and her feet and legs became wedged between a lateral pipe and the wall, resulting in the injuries complained of.

Plaintiff's theory of the landlord's liability is: That as a part of the rental agreement with all the tenants in this building, it became the duty of the landlord to furnish heat to each apartment; that the heating unit and the pipes carrying the heat to the various apartments were a part of a common system to serve all the apartments; that, consequently, the landlord reserved control of every part thereof, including the pipes, to the extent, and owed the same duty to the tenants, as the landlord does in maintaining stairways, hallways, lobbies and elevators that are used in common by tenants; that the pipes were exposed and uninsulated and when in use would become sufficiently hot to burn a person coming in contact therewith; that this created a dangerous condition; and that the defendant knew, or in the exercise of ordinary care could have known of said dangerous condition in time to have remedied the same and negligently failed so to do.

The defendant contends that a landlord is not an insurer of the condition of the premises, but that the lessee takes the premises as he finds them with all existing defects of which he knows or can ascertain by reasonable inspection; *with the exception* that this general rule does not apply relative to *defective conditions* in a portion of the premises which has been *reserved* by the landlord for use in common by his tenants as a group. Baird v. Ellsworth Realty Co., Mo.App., 265 S.W.2d 770. From this basis, defendant argues that its demurrer at the close of all the evidence should have been sustained because the tenant was in *full possession* of the apartment, including the heating pipes, or at least the exterior thereof; and that he had full knowledge of their condition and the danger, if any, they presented, and assumed the risk involved.

Defendant does not dispute the established rule that a landlord is under a duty to exercise ordinary care to keep the portions of the premises which he retains in his control in a reasonably safe condition for the use intended and is liable for damages for personal injuries resulting from his failure to perform that duty. Peterson v. Brune, Mo.Sup., 273 S.W.2d 278, 280. In that case, it was further said that one method to prove retention of control is to show that the portion of the premises involved was so constructed as to be used by, or subject to be used by, the landlord and another tenant, or two or more tenants. Gray v. Pearline, 328 Mo. 1192, 43 S.W.2d 802, 805(4).

The first question to be discussed is whether the landlord did retain control of the pipes within the tenant's apartment. This, for the reason, the foundation of

**4**

the landlord's duty is based upon its retention of control.

■ It is conceded that the landlord was required to furnish heat to the various apartments, as a part of the consideration for the payment of rent. We understand the landlord also concedes that the principal heating unit in the basement was under its exclusive control. Unquestionably, the pipes carrying the heat from the central unit to the various apartments were essential elements of the system and the method which the landlord had selected to serve its tenants. It is also conceded that there was no way the tenant could regulate or control the heat in the pipes.

After reviewing the authorities cited in the briefs, and some independent research, we are of the opinion that the weight of authority is that the landlord had and retained control of the entire heating system, including the pipes in each apartment. See the following authorities: Peterson v. Brune, supra; 32 Am.Jur., § 745 et seq., page 623; Tiffany, Vol. I, Landlord and Tenant, § 91, et seq.; Marentette v. Luechtefeld, Mo.App., 268 S.W.2d 44; Baird v. Ellsworth Realty Co., Mo.App., 265 S.W.2d 770; Darlington v. Railway Exchange Bldg., 353 Mo. 569, 183 S.W.2d 101; Gray v. Pearline, 328 Mo. 1192, 43 S.W.2d 802; Iowa Apartment House Co. v. Herschel, 36 App.D.C. 457, 464; O'Hanlon v. Grubb, 38 App.D.C. 251, 37 L.R.A., N.S., 1213; Gladden v. Walker & Dunlop, Inc., 83 U.S.App.D.C. 224, 168 F.2d 321; Hutchinson v. Des Moines Housing Corp., 248 Iowa 1121, 84 N.W.2d 10; Beauvais v. Springfield Institute for Savings, 303 Mass. 136, 20 N.E.2d 957, 124 A.L.R. 611; and Housing Authority of Birmingham Dist. v. Morris, 244 Ala. 557, 14 So.2d 527. These cases are cited as bearing on the question of control. The incident forming the basis for the alleged negligence of the landlord arises from a varied set of facts in such cases and may not be comparable to the incident in this suit.

The general statement in many decisions to the effect that a landlord is not liable to the tenant or to the guests of the tenant because of obvious defects in the rented premises, and that he has no duty to repair or keep the premises in a safe condition in the absence of an agreement to that effect, must always be read and considered in the light of the facts; that is, whether the tenant has been put into *full possession and control* of the premises and the *facilities* used in connection therewith, or whether the landlord retains *control* of any portion thereof or of any of the facilities. The distinction as to the liability or non-liability of the landlord under each state of facts is clearly stated in Marentette v. Luechtefeld, supra, 268 S.W.2d 46, as follows: "In determining the liability of a landlord for personal injuries to a tenant or to a member of the tenant's family because of a defective condition of the premises, there is indeed a clear distinction to be drawn between a case where the defective condition is in the premises demised to the tenant and of which he has been put into *full possession and control*, and one where the defective condition is in a portion of the premises (including agencies and appliances) which has been reserved by the landlord for use in common by his tenants as a group. In the first case, except for latent defects known to the landlord but not known to or discoverable by the tenant, the landlord is under no liability in the absence of an agreement to repair. Lasky v. Rudman, 337 Mo. 555, 85 S.W.2d 501; Mahnken v. Gillespie, 329 Mo. 51, 43 S.W.2d 797. In the last case, the landlord is under a duty to exercise ordinary care to keep the reserved portion of the premises in a reasonably safe condition, and will be answerable in damages for personal injuries resulting from his failure to perform. Darlington v. Railway Exchange Bldg., 353 Mo. 569, 183 S.W.2d 101; Gray v. Pearline, 328 Mo. 1192, 43 S.W.2d 802."

In the Marentette case, the facility which caused the injury was a gas pipe leading from a unit in the basement to the various apartments for the purpose of furnishing refrigeration. The lateral pipe leading to a refrigeration box in the plaintiff's apart-

ment had been disconnected by the landlord and the end thereof "pinched" together to prevent the escape of gas. The tenant had full knowledge of the change and of the condition of the end of the pipe. Later, the end of the pipe expanded and released gas into the apartment, injuring the tenant's child. The court held that the gas pipe was *under the control of the landlord*; and that whether the pipe, as left, had become dangerous and unsafe so as to make the landlord liable for permitting it to exist was a question for the jury.

In Iowa Apartment House Co. v. Herschel, supra, 36 App.D.C. 464, it is said: "The central plant of this system was located in the building, and the pipes which supplied plaintiff's apartment supplied heat to apartments above and below him. The entire system was, of course, under the exclusive care and control of the defendants, who, however, insist that it was the duty of the plaintiff to keep in repair steam pipes, radiators and appliances in his particular apartment. We cannot assent to this proposition. We think it clear that the obligation to furnish steam *heating* carried with it the duty of providing and maintaining the means for the proper fulfillment of that obligation. * * * Obviously, steam heating could not be furnished unless means were provided * * *".

In the recent case of Gladden v. Walker & Dunlop, Inc., 83 U.S.App.D.C. 224, 168 F.2d 321, 322, the court was considering a case where the plaintiff had received an electric shock from defective wiring of the apartment, and in discussing the question of whether the tenant or the landlord had control thereof, and whose duty it was to properly maintain the same, said: "It is familiar law that a landlord who keeps control over parts of an apartment house must use reasonable care for their safety. We have applied this principle to the lighting of a common entrance stairway. With regard to plumbing and heating systems, the principle extends to operative fixtures in the apartments leased to tenants and operation through them. We think the principle

is equally broad with regard to the electrical system. Plumbing, heating, and electrical fixtures are not isolated either in use or maintenance. They must be maintained and used, if at all, in conjunction with the systems of which they are parts. Accordingly the tenant who uses them is usually not expected to maintain them, but only to notify the landlord when they appear to be out of order. Since appellee sent an electrician in response to appellants' original complaint, the usual expectation obviously existed here. We think it immaterial whether the injury to appellant appears to have been caused by defects in operative fixtures or in other parts of the electric system. The law should follow custom and convenience in classifying such fixtures among the things that the landlord controls."

We recognize that the Supreme Court of Rhode Island, in the recent case of Yuppa v. Whittaker, 145 A.2d 255, 257, takes a contrary view. In that case, plaintiff's petition alleges substantially the same facts as exist in the instant case, even to the extent that the plaintiff was a small child receiving a burn on an unenclosed heating pipe. The court announced the frequently repeated general rule that "Where a tenant has *full control of rented premises* in which an obvious defect exists, he takes the risk thereof". (Italics ours); and upon that theory held that the landlord was not required to insulate unenclosed heating pipes. That opinion, of course, is not binding upon us, and we believe it is not in accord with the greater weight of authority, in the respect that a tenant has *control* of the heating pipes within his apartment.

We also call attention to Bernstorff v. Title Guarantee & Trust Co., 269 App.Div. 708, 53 N.Y.S.2d 877. The memorandum opinion is so brief it is of little value. There is no statement of facts or discussion of the law. Apparently, negligence was based on the fact that the radiator was installed about 7 inches from the wall.

Having reached the conclusion that the steam pipes were under the control of the

landlord, this imposes the duty on it to exercise ordinary care to keep them in a reasonably safe condition. Marentette v. Luechtefeld, supra; Darlington v. Railway Exchange Bldg., supra; and Gray v. Pearline, supra. And this poses the question of whether the evidence is sufficient to make a submissible issue of the landlord's violation of its duty.

■ Defendant contends that even though it be held that the landlord had reserved control of the pipes, nevertheless there is no common law duty on it to enclose or insulate them; that such a duty would arise only in respect to "inherently dangerous" instrumentalities or conditions; and that these pipes were not inherently dangerous. Citing Ullrich v. Kintzele, Mo. App., 297 S.W.2d 602.

It is undisputed: That the heating unit generated a temperature of 210 to 212 degrees; that the pipes were uninsulated and unprotected in any manner; that they were so located that a person could easily come in contact therewith; and if so, would receive a burn. Other tenants had received burns and complained to defendant's manager. One of defendant's heating experts testified that a person would be a "darn fool" to touch the pipes; and also that "It is perfectly obvious that children, if they touch it (pipe), will get burned." Defendant's expert witnesses also testified that the principal reason for leaving the pipes uninsulated was to save cost in the construction of the building, although the exposed pipes did contribute somewhat to the heating of the apartments.

■ Without approving the rule contended for by the defendant, that the condition must be "inherently dangerous" before the landlord owes any duty to correct the existing condition, we are of the opinion that these pipes were "inherently dangerous". This term has been defined as follows: "Inherently dangerous means that danger inheres in the instrumentality or condition itself, at all times, so as to require special precautions to be taken with regard

to it to prevent injury; instead of danger arising from mere casual or collateral negligence of others with respect to it under particular circumstances." Emery v. Thompson, 347 Mo. 494, 148 S.W.2d 479, 480. The condition of these pipes comes within this definition. However, we make the observation that most of the cases discussing the duty of a landlord to his tenants concerning areas or facilities over which the landlord retains control do not discuss or require that the condition be "inherently dangerous" before the landlord has a duty to act. As example, see Coplen v. Zimmerman, Mo.Sup., 271 S.W.2d 513; O'Neill v. Sherrill, Mo.App., 254 S.W.2d 263; Edwards v. E. B. Murray & Co., Mo.App., 305 S.W.2d 702.

■ Defendant also contends that this apartment building was constructed in keeping with the plans and specifications of similar buildings constructed during the period of 1948–1952, at which time there was a great demand for living quarters in the Kansas City area; and that the construction met the minimum requirements of the Federal Housing Administration (F.H.A.). The evidence is conflicting on the issue of the need to enclose the pipes; but if the condition of the heating system created a dangerous condition, as we have held, then the fact that other similar buildings were so constructed would be no defense.

■ The defendant also argues that the tenant had full knowledge of the condition of the pipes, and the danger connected therewith. But this is of no aid to the defendant because, as against the landlord, the tenant's knowledge of a defective condition in the premises *over which the landlord has control*, is of force only insofar as it bears upon the tenant's contributory negligence. Coplen v. Zimmerman, supra; Bartlett v. Taylor, 351 Mo. 1060, 174 S.W.2d 844. Of course, contributory negligence is not an issue in this case, due to the tender age of the plaintiff.

■ It may be conceded that this child falling from its bed and becoming entangled

in the pipes and receiving the injuries complained of was an unusual occurrence. But the landlord knew that the child occupied the apartment, and no doubt knew of children occupying other similar apartments. It is not the unusual manner of receiving injuries that determines liability, but whether the defendant could have reasonably anticipated that a child would receive injuries from the pipes. In Hammontree v. Edison Bros. Stores, Inc., Mo.App., 270 S.W.2d 117, 126, it is said: "Relating to those dangers to be reasonably anticipated—if there is some probability or likelihood, not a mere possibility, of harm sufficiently serious that ordinary men would take precautions to avoid it, then the failure to do so is negligence. While the likelihood of a future happening is the test of a duty to anticipate, this does not mean the chances in favor of the happening must exceed those against it. The test is not the balance of probabilities, but of the existence of some probability of sufficient moment to induce the reasonable mind to take the precautions which would avoid it."

█ It is our conclusion that the evidence made a submissible issue of negligence and that the court did not err in overruling defendant's motion for a directed verdict.

█ We now consider plaintiff's contention that the court erred in giving defendant's instructions 4 and 5. Instruction 4 informed the jury that a landlord is not an insurer of the condition of the leased premises and the lessee and members of his family take the premises as they find them, *except for such portions thereof that are reserved to the landlord*, and then continues: "You are, therefore, instructed that if you find and believe from the credible evidence that the condition of which plaintiff complains was an open, obvious and continuing condition, * * * *and if you find that Martin Scott Thompson as tenant had the right if he chose to do so, to cover the said pipes with insulating material, you may find that the exterior of the pipes in ques-*

*tion was a part of the leased premises and in the possession and under the control of the tenant,* and if you so find, then your verdict must be * * * in favor of the defendant." (Italics supplied.)

We have heretofore held that the pipes were under the control of the defendant, and this would include the exterior as well as the interior, and the steam passing through said pipes. This instruction authorizes the jury to find that the tenant had control of the *exterior* of the pipes if he "had the right if he chose to do so, to cover the pipes with insulating material, * *". The instruction does not hypothesize any facts from which the jury could find that he had a right, by contract or otherwise, to insulate the pipes. Under our holding, the tenant would have no *legal right* to enclose the pipes because they were under the control of the landlord.

The evidence relied on by defendant to raise the issue of the tenant's *right* to insulate the pipes is substantially as follows: Thompson and his wife testified that they requested of defendant's manager that they be permitted to insulate the pipes and were refused that privilege. Defendant's manager was called as a witness by plaintiff, and on cross examination testified that she had no recollection of any conversation with the Thompsons about insulating the pipes, but that she had received complaints from other tenants about the hot pipes; and some of the ladies had received burns while cleaning their apartments. She was then asked, if the Thompsons had asked permission to cover the pipes would she have consented, and replied that consent would have been given because there was no rule or order against it; and that some of the tenants did cover the pipes "I think * * in the spring—1953 or 1954." This was after plaintiff's injury.

This evidence falls short of making a factual issue of whether the landlord gave a *right* to Thompson to cover the pipes. What the manager would have done if the request had been made was never conveyed

to Thompson. But there is a more patent reason why the defendant would not be relieved of its duty to correct a dangerous condition over which it had control. It could not avoid this duty by graciously advising the tenant that he may incur the trouble and expense of eliminating the danger. The responsibility was on the landlord. Consequently there was no legal or factual basis to submit to the jury the question of the tenant's "right * * * to cover the said pipes * * *". It must be understood that we are not holding that if the landlord had given its consent for the tenant to cover the pipes that this would be sufficient for the jury to find that the "exterior of the pipes * * * was * * * *under the control of the tenant* * * *", and the verdict should be for the defendant. The giving of permission to the tenant would, in effect, be a recognition by the landlord that it had control of the pipes. Iowa Apartment House Co. v. Herschel, supra; Reiman v. Moore, 42 Cal.App.2d 130, 108 P.2d 452.

Instruction 4 is a misdirection, and prejudicial.

The pertinent part of instruction 5, which plaintiff contends is erroneous, reads: "You are further instructed that if you find and believe from the evidence that the danger of one being burned by contact with the pipes in question while hot was an open, obvious and continuing danger, *and if you further find from the credible evidence that plaintiff's father had the right to insulate the steam pipe in question, and if you find that the exterior of said pipes was a part of the leased premises, as defined in instruction 4, and under the control of the tenant, if so, and if you further find that the failure to install insulating material around the pipes in question was the direct and proximate cause of the injuries claimed by plaintiff,* if any, then your verdict must be * * in favor of the defendant." (Italics supplied.)

This instruction contains and re-emphasizes the misdirection contained in instruc-

tion 4, and must be held erroneous for the same reasons.

Defendant makes some comment or criticism of plaintiff's instruction No. 1. The correctness of that instruction is not before us, and we will not discuss its sufficiency.

Because of error in defendant's instructions 4 and 5, the judgment must be reversed and the cause remanded. It is so ordered.

All concur.