

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

JACQUELINE STEPHENSON, )
AS MOTHER AND NEXT FRIEND ) No. ED100327
OF JADA STEPHENSON, A MINOR, )
)
    Plaintiff/Appellant, ) Appeal from the St. Louis County
) Circuit Court
vs. )
) Honorable David L. Vincent, III
COUNTRYSIDE TOWNHOMES, LLC, )
)
    Defendant/Respondent. ) Filed: July 29, 2014

## Introduction

In this personal injury action, Jacqueline Stephenson, (Plaintiff) as Mother and Next Friend of J.S., a minor, appeals from a judgment entered on a jury verdict in favor of Countryside Townhomes, LLC (Defendant). Plaintiff filed suit to recover damages for injuries sustained by J.S. when she fell from a second-story bedroom window of an apartment leased from Defendant. On appeal, Plaintiff claims the trial court erred by: (1) submitting a verdict-directing instruction which required a finding that J.S.'s bedroom window was within Defendant's control for the purpose of making repairs; and (2) admitting evidence regarding Plaintiff's delinquent rent. We affirm.

## Factual Background

In September 2008, Plaintiff signed a one-year lease agreement to rent a two-bedroom apartment from Defendant, the owner and management corporation of a large, multi-unit apartment complex in St. Louis County. Shortly thereafter, Plaintiff moved into the apartment with her two daughters, 4-year-old J.S. and her 14-year-old sister. In August 2009, Plaintiff renewed her lease with Defendant for another year. On the morning of March 29, 2010, Plaintiff left for work around 6:00 a.m., while J.S. and her sister left for school. After returning from school, J.S. and her sister remained at the apartment with Plaintiff's then fiancé, Paul Jones, who was supervising the girls that afternoon while Plaintiff was at work. At around 5:30 p.m., Plaintiff's mother, Sylvia Stephenson, who lived in the apartment next door, saw J.S. sitting outside on the back steps of the patio crying. J.S. told her grandmother that she had fallen out of a window. Mrs. Stephenson called out to her husband to assist with J.S. Mrs. Stephenson then ran next door to speak with J.S.'s sister who at the time believed that J.S. was upstairs playing and did not realize that she had been injured. J.S. was taken to the hospital and treated for her injuries, which included multiple jaw fractures and a lacerated liver.

After being notified about the incident the next day, Defendant's then property manager, Sean Brady, went to Plaintiff's apartment. Upon entering J.S.'s second-floor bedroom, Brady observed an open window that was missing both the screen and storm window. Upon closer look, Brady noticed that the thumbscrew lock[1] was also missing

---

[1] The record indicates that Defendant used this type of lock to secure windows that opened horizontally by sliding the window from side to side, rather than vertically.

from the window. He also saw that J.S.'s bed was pushed up against the wall directly beneath the open window. Upon further inspection, Brady noticed that the window screen and storm window were leaned up against a wall in a corner of the room.

After the incident, Plaintiff and her two daughters remained at the apartment for several months before moving to her parents' apartment next door. In October 2010, Plaintiff filed a personal injury action against Defendant to recover damages for the injuries that J.S. sustained from falling out of the second-floor window. In her petition, Plaintiff alleged that Defendant's negligence caused J.S.'s injuries by: (1) failing to remedy the window's "defects," namely, the "absence of a locking device, screen, or storm window" and thereby rendering the premises "not reasonably safe;" (2) failing to adequately warn Plaintiff about the window's "fall hazard;" and (3) failing to make necessary repairs to the window. The matter was tried to a jury. At a pre-trial conference, Plaintiff presented a motion *in limine* to exclude evidence regarding her rent delinquency, which the trial court denied. At the close of all the evidence, Defendant moved for a directed verdict on the basis that there was no substantial evidence to establish that Defendant had control over J.S.'s bedroom window for the purpose of making repairs. The trial court denied the motion. Following a jury verdict for Defendant, Plaintiff filed a motion for new trial, which was denied. Plaintiff now appeals.

## Discussion

### *Point I: Instructional Error*

3

In her first point, Plaintiff contends that the trial court erred by submitting the verdict-directing instruction (Instruction No. 7) to the jury because there was no substantial evidence to establish that a genuine dispute existed regarding whether J.S.'s bedroom window was within Defendant's control for the purpose of making repairs. Defendant responds that the issue of whether it retained control over J.S.'s window to establish liability was disputed at trial and was therefore properly submitted to the jury.

*Standard of Review*

The question of whether the trial court properly instructed the jury is a question of law, *Rice v. Bol*, 116 S.W.3d 599, 606 (Mo. App. W.D. 2003), which we review *de novo*. *Powderly v. South County Anesthesia Assoc., Ltd.*, 245 S.W.3d 267, 276 (Mo. App. E.D. 2008). Generally, a verdict-directing instruction is sufficient if it substantially follows the language of the Missouri Approved Instructions. *Dhyne v. State Farm Fire and Cas. Co.*, 188 S.W.3d 454, 459 (Mo. banc 2006). Moreover, a verdict-directing instruction must hypothesize every fact essential to a plaintiff's right to recover. *Tucker v. Taksel*, 345 S.W.2d 385, 388-89 (Mo. App. E.D. 1961) (instructional error found where element of control omitted in verdict-directing instruction). This includes the requisite finding of "all facts disputed or not conceded" which are necessary to support the jury's verdict. *Bowman v. McDonald's*, 916 S.W.2d 270, 284 (Mo. App. W.D. 1995).

In determining whether there is sufficient evidence to support a jury instruction, we view the evidence in the light most favorable to the offering party and give that party the benefit of all reasonable inferences. *Caples v. Earthgrains Co.*, 43 S.W.3d 444, 449 (Mo. App. E.D. 2001). To reverse a jury verdict based on instructional error, the party

4

challenging the instruction must show that the instruction misdirected, misled, or confused the jury. *Dhyne*, 188 S.W.3d at 459.

The verdict-directing instruction submitted by the trial court provided:

INSTRUCTION NO. 7

Your verdict must be for plaintiff if you find:

First, there was no lock on plaintiff's bedroom window, and as a result the window was not reasonably safe, and

*Second, the plaintiff's bedroom window was in the possession and control of defendant for the purpose of making repairs and was used by the tenant of defendant with its consent, and*

Third, the defendant knew or by using ordinary care could have known of this condition, and

Fourth, the defendant failed to use ordinary care to make the plaintiff's window reasonably safe, and

Fifth, as a direct result of such failure, plaintiff sustained damage.

M.A.I. 22.05 [1981 Revision]; modified by *Caples v. Earthgrains Co.*, 43 S.W.3d 444 (Mo. App. E.D. 2001). (emphasis added).

At the jury instruction conference, Defendant offered the verdict director, Instruction No. 7, which was patterned after MAI 22.05, as modified, in accordance with the Notes on Use. Instruction No. 7 submitted the issue of whether J.S.'s bedroom window was within Defendant's control for the purpose of making repairs. Plaintiff did not submit her own verdict director, but objected to Defendant's proffered instruction, claiming the second paragraph should be omitted because the issue of Defendant's control over J.S.'s window was not in dispute. The trial court overruled the objection and submitted Instruction No. 7 to the jury.

5

The Notes on Use to MAI 22.05 [1996 revision] provide as follows:

This instruction is to be used only where the injury occurred in an area where the landlord has admittedly retained possession and where plaintiff has a right to be, such as a common stairway, hall, or yard.

*If there is a dispute as to whether the site of the injury was an area in landlord's control, the additional issue should be hypothesized in the following form*:

**Second, the [site of injury] was in the possession and control of defendant and was used by tenants of defendant with his consent.**

[Emphasis added].

In accordance with the Notes on Use to MAI 22.05, the dispositive inquiry is whether a dispute existed regarding the issue of Defendant's control over J.S.'s bedroom window. *See Caples*, 43 S.W.3d at 449. Where the issue of the landlord's control is in dispute, the question of whether the landlord retained sufficient control over the area where the injury occurred is a question for the trier of fact. *See Fitzpatrick v. Ford*, 372 S.W.2d 2d 844, 850 (Mo. 1963); *Caples*, 43 S.W.3d at 449; *see also Frazier v. Riggle*, 844 S.W.3d 71, 73 (Mo. App. E.D. 1992). Thus, if a dispute existed as to whether Defendant retained control over the second-floor window, then the issue of control was properly submitted to the jury. *See Fitzpatrick*, 372 S.W.2d at 850; *Caples,* 43 S.W.3d at 449.

Under Missouri law, landlords are generally protected from liability for personal injuries caused by a dangerous condition existing on the leased premises. *Caples*, 43 S.W.3d at 449; *Dean v. Gruber*, 978 S.W.2d 501, 503 (Mo. App. W.D. 1998). The recognized exceptions to the rule include: (1) a hidden dangerous condition; (2) where

6

the injury occurs in a "common area" used by two or more tenants and/or landlord and tenants; and (3) where the landlord is contractually obligated to make repairs and has retained sufficient control over the premises. *Caples*, 43 S.W.3d at 449.

Although in her petition for damages, Plaintiff did not expressly allege upon which exception her theory of liability is based, it appears from the record that liability is premised upon the third exception. Under this exception, Plaintiff must establish that Defendant was contractually obligated to make repairs to the second-floor window and that Defendant retained sufficient control necessary to establish liability based upon a duty to repair. *See Caples*, 43 S.W.3d at 450-51.

The retention of control by the landlord is an essential element of liability. *Fitzpatrick*, 372 S.W.2d at 850. This is because the foundation of the landlord's duty is premised on his retention of control. *Dean*, 978 S.W.2d at 504; *Tucker*, 345 S.W.2d at 387. Without sufficient evidence of the landlord's control, the landlord cannot be held liable in tort for negligently failing to make repairs. *Woods v. Gould*, 515 S.W.2d 597, 596 (Mo. App. W.D. 1968); *see also Nenninger v. Trustees of Oran Life Tabernacle Church*, 789 S.W.2d 530, 535 (Mo. App. S.D. 1990); *Dean*, 978 S.W.2d at 505.

Plaintiff argues that the issue of control was not in dispute because the evidence established that Defendant retained control over J.S.'s bedroom window for the purpose of making repairs. In support, Plaintiff relies on *Thompson v. Paseo Manor South, Inc.*, 331 S.W.2d 1 (Mo. App. W.D. 1959). In *Thompson*, the tenants filed suit against the landlord of an apartment complex to recover damages for burn injuries sustained by their minor child when she fell from a bed onto an uninsulated heating pipe. *Id*. at 3. After a

jury verdict for the landlord, the tenants appealed and argued that as part of the rental agreement, the landlord had a duty to furnish heat to all of the apartments and that the central heating unit and the pipes carrying the heat to the various apartments were part of a "common system" over which the landlord reserved control. *Id.* The appellate court agreed and further found that the exposed heating pipes was "inherently dangerous," reaching temperatures of 210-212 degrees. *See id.* at 5-6.

Unlike the instant case, in *Thompson*, the landlord conceded that the heating system was under its exclusive control. *Id.* at 4. It was also undisputed that the tenants could not regulate or control the heating pipes. *Id.* Here, however, Defendant made no such admission and instead denied having control over J.S.'s window. Plaintiff's bare assertion that an "admission" was made when Defendant's former property manager indicated during cross-examination that Defendant was not prevented from installing a window with a built-in lock does not establish that the issue of control was undisputed.

Plaintiff points to paragraphs 9, 11, 12, and 13 of the lease agreement as evidence that Defendant retained control over the second-floor window for purposes of making repairs. Citing paragraph 9, Plaintiff asserts that Defendant reserved the right to exclude non-tenants from the apartment. However, paragraph 9 contains no language regarding Defendant's right to exclude anyone from the leased premises. Rather, this paragraph merely pertains to the tenant's obligation to inspect the premises and confirm that the apartment and common areas are "in good order and repair."

Plaintiff also claims that Defendant's control over the premises was evident because tenants were prohibited from making any "alterations, additions, or

8

modifications," or installing "major appliances." While we agree that paragraph 12 provides that tenants were not authorized to make alterations or modifications without Defendant's consent, the record indicates that some modifications were made by the tenant. For instance, Plaintiff said that she installed new blinds on J.S.'s window after her dog chewed the original ones. There was also evidence that the screen on J.S.'s bedroom window had been removed after a storm left it partially detached from the window frame. The record further indicates that at the time of the incident the storm window was missing from J.S.'s bedroom window. Although the storm window (and screen) were leaning against a wall in J.S.'s bedroom on the day after the accident, there is no clear explanation in the record as to how or when the storm window was removed, or who removed it.

Plaintiff also points to paragraphs 11 and 13 of the lease in support of her assertion that Defendant reserved the right to enter the apartment to make repairs to the windows. Pursuant to paragraph 11, Defendant agreed to "maintain and repair the floors, ceiling and windows" of the apartment. Under paragraph 13, Defendant reserved the right to retain a key to enter the apartment under certain circumstances, *i.e.*, to inspect or in case of an emergency. This provision, however, when read in its entirety, does not appear to contemplate that Defendant would have free and unfettered access to the premises. Rather, the express language of the provision indicates that while access would be permitted under certain circumstances, it would generally be "by agreement with tenant," and "after notifying tenant," and only during certain hours of the day.

While we do not disagree that the aforementioned lease provisions provide some evidence on the issue of Defendant's control over the premises, the question here is whether the issue of control was *in dispute*, and thus properly submitted to the jury. The mere reservation of a right by a landlord to enter and inspect an apartment or make improvements and repairs does not by itself, create liability. *See McKinney v. HMKG & C., Inc.*, 123 S.W.3d 274, 282 (Mo. App. W.D. 2003); *Richeson*, 931 S.W.2d at 509. Nor does the fact that repairs were made prior to or after the injury occurred establish control, absent other evidence. *See Caples*, 43 S.W.3d at 452; *Dean*, 978 S.W.2d at 505; *Nenninger*, 789 S.W.2d at 537.

Defendant maintains that the issue of control was in dispute and therefore properly submitted to the jury. In support, Defendant cites *Lemm v. Gould*, 425 S.W.2d 190, 195 (Mo. 1968) and *Fitzpatrick v. Ford*, 372 S.W.2d 844, 850 (Mo. 1963). In *Lemm*, the Missouri Supreme Court addressed the relationship between the landlord's retention of control and the obligation to make repairs. 425 S.W.2d 190. In that case, the tenants filed suit against the landlords to recover damages for injuries sustained by their three-year-old child when he fell from a fourth-floor porch that tenants claimed had not been adequately repaired by the landlords. *Id.* at 191. The tenants' theory of liability was based on the landlords' agreement to repair the porch "to make it safe for the [tenants'] children to play on" and the landlords' retention of control over the porch for the purpose of making such repairs.[2] *Id.* at 194-95. The case was tried to a jury. Before

---

[2] The landlords' agreement to repair the porch was especially significant in *Lemm* because the apartment leased by the tenants had no yard in which the tenants' children could play. When the landlords agreed to repair the porch, they knew the children would be playing on it. 425 S.W.2d at 194.

10

deliberations, the trial court submitted to the jury a verdict-directing instruction, patterned after MAI 22.05, as modified, which required the jury to determine whether the porch "was in the possession and control of [the landlord] . . . for the purpose of making repairs." *Id*. at 193. The jury returned a verdict for the tenants and the landlords appealed, challenging the issue of control submitted in the verdict-directing instruction and the denial of a directed verdict. *Id*.

In upholding the jury verdict, the Court found there was sufficient evidence from which the jury could infer that the landlords were vested with the degree of control over the premises to obligate them to maintain the porch in a reasonably safe condition for the tenants and their children. *Id*. at 195. In reaching this conclusion, the Court emphasized that the landlords' obligation was not based solely on the agreement to make repairs, but was also due to the landlords' retention of control over the premises, as evident from the facts, and as explained, in pertinent part:

> The possession or control, which must be shown in order to make a landlord liable under this rule, *is not to be found merely in the obligation of the landlord to make repairs or the right to enter the premises. There must be something more—some additional fact or facts* from which a jury could infer that under the agreement the tenant gave up and surrendered his right to exclusive possession and control and yielded to the landlord some degree or measure of control and dominion over the premises; some substantial evidence of a sharing of control as between landlord and tenant[.]

*Lemm*, 425 S.W.2d at 195. (emphasis added).

Thus, the obligation to make repairs and the right to enter the premises are insufficient without *some additional facts* from which a jury can reasonably infer that the landlord retained the requisite degree of control necessary to render it liable based on a

11

duty to make repairs. *See id*. (emphasis added). As noted by the Court, some evidence of control included the fact that the landlords retained a duplicate key to enter the tenants' apartment, not only in cases of emergency, but also to enter the apartment "on their own initiative" to make any repairs that the landlords deemed necessary, without consulting with tenants or obtaining their consent. *Id*. From this evidence, the jury could infer that the landlords essentially had "free access to the premises" to make repairs and replace any items they determined were necessary. *Id*. The Court further found that the evidence demonstrated a "sharing of control" between the landlords and the tenants. *Id*.

Moreover, the Court implicitly rejected the landlords' argument that the trial court erred in submitting the case under verdict-directing instructions that required the jury to determine whether the porch was within the landlords' control for the purpose of making repairs. *See id*. Indeed, the Court noted that the "jury was warranted in finding these facts bearing on the question of control over the porch." *Id*.

Defendant also cites *Fitzpatrick v. Ford,* in support of its argument that the verdict director properly submitted to the jury the issue of the landlord's control. 372 S.W.2d at 849. In *Fitzpatrick*, the Missouri Supreme Court reversed a jury verdict on the basis that the trial court erred in submitting a verdict-directing instruction which did *not* require the jury to find that the landlords retained control of the area where the injury occurred. In that case, the parents of a two-year-old child filed suit against the landlords to recover damages for injuries sustained by their child when a porch roof collapsed at their rental home. *Id*. at 845. After a jury verdict for the tenants, the trial court granted the landlords' motion for new trial and the tenants appealed. *Id*. On appeal, the Court

12

found there was conflicting testimony and evidence regarding the agreement to make repairs. *Id*. at 847. The Court further found that, "[t]he ultimate question . . . for the jury to resolve on the question of liability . . . was whether the landlords . . . reserved control over the porch." *Id*. Consequently, the Court concluded that because the issue of the landlord's control was disputed, it was error for the trial court to submit a verdict-directing instruction without a sufficient hypothesis on the issue of control. *Id*. at 850.

Defendant also points to *Caples v. Earthgrains Co.*, 43 S.W.3d 444, 450 (Mo. App. E.D. 2001), for the proposition that where a dispute exists as to whether the landlord retained control over the site of the injury, the issue of control must be submitted to the jury in the verdict-directing instruction. In *Caples*, this Court rejected the plaintiff's argument that the trial court should have omitted the issue of control in the verdict-directing instruction. *Id*. In that case, the plaintiff filed a negligence action after sustaining injuries on two separate occasions while working as a forklift operator for a company that leased a warehouse from the defendant. *Id*. at 447. The trial court denied the plaintiff's request to submit verdict directors that omitted the issue of the landlord's control over the areas where each of the injuries occurred. *Id*. at 448. Instead, the trial court submitted the following verdict-directing instruction, patterned after MAI 22.05, as modified, (with regard to the first injury), and which stated, in pertinent part:

> [T]he loading floor was *in the possession and control of defendant for the purpose of making repairs* and was used by the tenant of defendant with its consent[.]

> *Id*. (emphasis added).

13

After a jury verdict for the landlord, the plaintiff appealed, challenging the verdict-directing instructions. The plaintiff argued that the trial court erred in submitting the issue of control to the jury because the evidence established as "a matter of law" that the area where he was injured was a "common area" under the landlord's control. *Id*. This Court disagreed, concluding that the issue of the landlord's control was in dispute and therefore properly submitted to the jury. *Id*. at 450.

As the foregoing cases illustrate, here, the issue of the landlord's control is a question for the jury. This is not a case where the facts conclusively establish as "a matter of law" that the area where the injury occurred was admittedly within the landlord's control. To the contrary, it is evident from the record that the issue of Defendant's control over the second-floor window was in dispute. The record does not reflect that Defendant's maintenance employees had "free access" to the premises to make repairs at their own discretion without notifying tenants. There was no evidence that the maintenance technicians entered Plaintiff's apartment to make random repairs "on their own initiative." The record shows that the maintenance staff made repairs at the apartment only after Plaintiff notified Defendant's office personnel and requested them to do so. This is apparent from Plaintiff's testimony and other evidence presented at trial which demonstrated that repairs were done at her request.

At trial, the former property manager testified that Defendant's employees did not enter tenants' apartments to make repairs at their own discretion. He explained that typically work repair orders were made after a tenant had contacted the office with a repair request and then the maintenance staff would be notified.

14

Plaintiff's mother, Sylvia Stephenson, testified that if she wanted something repaired at her apartment, she would have to call Defendant's office to notify them. She said the maintenance crew would not "just walk in [her] apartment and look for things that were wrong." Rather, Mrs. Stephenson indicated that she would first have to contact Defendant's office about any repairs and when the maintenance crew arrived at her apartment, they would "knock on the door" and then wait until she "let them in," but they would not "just walk in."

Plaintiff's own testimony further confirms that Defendant's maintenance employees did not enter her apartment to make random repairs at their own discretion. Plaintiff testified that during the time she leased the apartment, she had requested several repairs, including fixing her stove, air conditioner, a ceiling fan, and a "sparking outlet." The record indicates that Defendant's maintenance technicians were dispatched to the apartment to make those requested repairs, but only after being notified by Plaintiff in advance.

Having reviewed the record, we find that the verdict director properly submitted the issue of control to the jury. As an essential fact issue necessary to establish liability, the verdict-directing instruction must require the finding that Defendant retained control over the site of the injury. *See Fitzpatrick*, 372 S.W.2d at 849. To omit this finding, as Plaintiff suggests, would allow the jury to base its verdict on less than all of the essential elements necessary to establish liability, and as a result, the jury would be left to speculate whether the element of control was a necessary part of Plaintiff's case. *See Fitzpatrick*, 372 S.W.2d at 849; *Tucker*, 345 S.W.2d at 388-89. We therefore conclude

15

that the trial court did not err in submitting Instruction No. 7 to the jury. Point I is denied.

### Point II: Admission of Evidence

In her second point, Plaintiff contends that the trial court abused its discretion by admitting evidence regarding her rent delinquency and eviction notices. Plaintiff claims this evidence was irrelevant and prejudicial.

### Standard of Review

The admissibility of evidence lies within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Mitchell v. Kardesch*, 313 S.W.3d 667, 674-75 (Mo. banc 2010). When reviewing for an abuse of discretion, we presume the trial court's ruling is correct and reverse only when the ruling is "clearly against the logic of the circumstances" and "so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* at 675. It is within the trial court's discretion to weigh the probative value of the evidence against its prejudicial effect. *Id.* If reasonable persons can differ about the propriety of the trial court's action, then it cannot be said that the trial court abused its discretion. *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 872 (Mo. App. E.D. 2009). An abuse of discretion compels reversal only if "the prejudice resulting from the improper admission of evidence is outcome-determinative." *Id.*

During cross-examination, the trial court may grant wide latitude particularly when a party offers himself as a witness in a civil case. *Greco v. Robinson*, 747 S.W.2d 730, 736 (Mo. App. E.D. 1988). "Cross-examination tests a witness' accuracy, veracity,

and credibility." *State v. Gardner*, 8 S.W.3d 66, 72 (Mo. banc 1999). Therefore, cross-examination testimony is not necessarily limited to matters that tend to prove the issues on trial. *Id.* As a general rule, the credibility of a witness is always a relevant issue. *Mitchell*, 313 S.W.3d at 675. During cross-examination, a witness may generally be asked any question directed to test his or her recollection, accuracy, veracity, or credibility. *Chism v. Cowan*, 425 S.W.2d 942, 948 (Mo. 1967).

At trial, Plaintiff testified on direct examination that Defendant had ignored her repeated requests to have a lock installed on J.S.'s bedroom window. To challenge this testimony, Defendant presented all of its maintenance work orders to show that repairs were made to Plaintiff's stove, garbage disposal, air conditioner, and ceiling fan, and that no work orders existed regarding a request to install a lock on J.S.'s window.

On cross-examination, Plaintiff said that on a few occasions when rent was overdue, she had met with Defendant's office personnel to resolve the matter. When questioned whether she had made any complaints about her apartment during meetings with Defendant's office personnel in November and December 2008, Plaintiff could not recall doing so. Plaintiff said that when she contacted the office about a rent issue in September 2009, she "let them know that we still needed something done for [the window]." However, Plaintiff did not recall mentioning anything about J.S.'s window during an office meeting in October 2009. Over objection, the trial court allowed Defendant to introduce copies of the rent notices and promissory notes signed by Plaintiff.

Plaintiff claims the admission of this evidence was irrelevant and confused the jury, leading it to believe that Defendant owed no legal duty (or only a minimized duty) to Plaintiff. Defendant counters that the evidence was properly admitted to show that notwithstanding Plaintiff's numerous contacts with Defendant and its employees before the March 2010 injury, there was no record of Plaintiff's request for a window lock. Defendant also maintains that Plaintiff's cross-examination testimony was admissible because it called into question her previous testimony that she had made multiple requests for a window lock that Defendant ignored. While the records of delinquent rent may have been excessive, given the maintenance records that Defendant presented, we cannot conclude that the trial court abused its discretion by allowing them into evidence.

The trial court's broad discretion extends to the determination of the admissibility of evidence on collateral matters. *Midwest Materials Co. v. Village Development Co.*, 806 S.W.2d 477, 495 (Mo. App. S.D. 1991). An abuse of discretion occurs only when the trial court's ruling is "clearly against the logic of the circumstances" and "so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful consideration." *See Mitchell*, 313 S.W.3d at 675. We do not believe this threshold was met. When considering the evidence in light of its probative value, the evidence showed that Plaintiff had numerous contacts with office personnel and served to demonstrate that she had ample opportunities to meet with Defendant's employees to request a window lock. This was relevant to the issue of Plaintiff's credibility as well as the jury's determination of whether Defendant had knowledge of such a request prior to the incident.

However, even assuming *arguendo*, that the admission of the rent notices was erroneous, we do not discern that the jury was so confused or misled by this evidence that it materially affected the outcome of the case.    *See Midwest Materials Co*., 806 S.W.2d at 495.  Accordingly, we find that the trial court's decision to admit the evidence was not "clearly against the logic of the circumstances" or "so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration."  *See Williams*, 281 S.W.3d at 874.  Point II is denied.

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
Philip M. Hess, Judge

Lisa Van Amburg, P.J. and
Patricia L. Cohen., J. concur.