James M. Dowd, Chief Judge
This case arose on April 28, 2012 when a tent measuring 40 feet by 60 feet and erected by bar owner Kilroy Was Here, LLC ("Kilroy") on its premises near Busch Stadium for the purpose of hosting customers following a midday St. Louis Cardinals professional baseball game broke free from its moorings due to high winds during a severe thunderstorm, striking and killing Albert Goodman ("Decedent") and seriously injuring several others. Respondents sued Kilroy for personal injury and wrongful death and submitted the case to the jury on three theories: premises liability, general negligence, and negligence per se. At trial, Kilroy moved for a directed verdict, which was denied by the court, and the jury reached a general verdict in favor of each Respondent. The trial court denied Kilroy's timely motion for judgment notwithstanding the verdict and entered judgment on the jury's verdict.
On appeal, Kilroy contends the trial court erred because there was insufficient evidence to support Respondents' premises liability and negligence per se claims. Specifically, in Point I Kilroy asserts there was no substantial evidence that Kilroy had actual or constructive knowledge the tent was not reasonably safe. And in Point II, Kilroy claims there was insufficient evidence that Kilroy had notice the tent did not comply with St. Louis City Ordinance 68788, § 109.3.1, Note A (the "City Ordinance") requiring that the tent be able to withstand 90-mile-per-hour winds. We disagree on both points and affirm.
Factual and Procedural Background
The following facts are undisputed: Kilroy, owned by Arthur and Brenda Randall *494 and their two adult children, Andrea Bugg and Arthur Randall, Jr., operates Kilroy's Sports Bar, located at 729 South 7th Street in downtown St. Louis, Missouri, which is immediately south of Busch Stadium where the Cardinals play. In April 2012, Kilroy obtained a permit to temporarily install the tent on its parking lot for use on days when the Cardinals played at home. Kilroy obtained an occupancy permit for the tent after three inspections by officials from the City of St. Louis.
On April 28, 2012, the Cardinals had a home game beginning at approximately noon. The weather was sunny throughout the game. Janet Martinez, Kurt Volk, Kelly Hendricks, Barbara Estivo, John Desousa, Jeff Maxvill, Tammy Hinds, and Al Goodman all attended the game and afterward went to Kilroy's and gathered under the tent. Inside the tent, Kilroy sold alcoholic beverages and had a DJ playing music and conducting trivia games.
During the Cardinals game and afterward, a severe thunderstorm developed in central Missouri and moved east-to-southeast across the state toward the City of St. Louis. The National Weather Service issued warnings of the storm's approach, and local television stations interrupted regularly-scheduled programming with warnings about the storm. Kilroy did not warn its guests of the approaching storm system or take any action to evacuate the tent.
Between 3:41 p.m. and 3:46 p.m., high winds from the storm reached Kilroy's parking lot, lifted the tent from its moorings, and caused the serious injuries and death giving rise to this case. Al Goodman was killed, and Janet Martinez, Kurt Volk, Kelly Hendricks, Barbara Estivo, John Desousa, Jeff Maxvill, and Tammy Hinds suffered various injuries including head lacerations, concussions, broken ribs and spines, collapsed lungs, fractured jaws, and nerve damage.
Standard of Review
The standard of review for the denial of a motion for judgment notwithstanding the verdict (JNOV) is essentially the same as the standard for the denial of a motion for directed verdict. City of Harrisonville v. McCall Serv. Stations , 495 S.W.3d 738, 748 (Mo. banc 2016) (citing All Am. Painting, LLC v. Fin. Solutions & Assocs., Inc. , 315 S.W.3d 719, 723 (Mo. banc 2010) ). When reviewing a circuit court's denial of a motion for JNOV, we must determine whether the plaintiff made a submissible case by offering evidence to support every element necessary for liability. Id. (citing Smith v. Brown & Williamson Tobacco Corp. , 410 S.W.3d 623, 630 (Mo. banc 2013) ). Evidence is viewed in the light most favorable to the jury's verdict, giving the plaintiff all reasonable inferences and disregarding all conflicting evidence and inferences. Id. (citing Smith , 410 S.W.3d at 630 ). We reverse the jury's verdict for insufficient evidence only where there is a complete absence of probative fact to support the jury's conclusion. Id. (citing Smith , 410 S.W.3d at 630 ).
Point I: Premises Liability
In its first point on appeal, Kilroy claims that there was insufficient evidence presented at trial to support the jury's verdict on Respondents' claims of premises liability. Specifically, Kilroy contends that the record contains no substantial evidence that Kilroy had actual or constructive knowledge the tent was not reasonably safe. We disagree.
To make a submissible case for premises liability, a plaintiff must adduce substantial evidence that (1) a dangerous condition existed on the premises that involved an unreasonable risk; (2) the landowner *495 knew, or by using ordinary care should have known, of the condition; (3) the landowner failed to use ordinary care in removing or warning of the danger; and (4) as a result, an invitee was injured. Griffith v. Dominic , 254 S.W.3d 195, 198 (Mo. App. S.D. 2008). As with any claim of general negligence, the question whether a duty is owed in a premises liability case is determined by whether a reasonably prudent person would have anticipated danger and provided against it. Hoover's Dairy , Inc. v. Mid-America Dairymen , Inc./Special Products , Inc. , 700 S.W.2d 426, 431 (Mo. banc 1985).
Here, we find that the record contains substantial evidence Kilroy had at least constructive, if not actual, knowledge that the tent posed a reasonably foreseeable danger. Evidence at trial showed that the tent itself had numerous warnings on its sidewalls and roof flaps that it was not intended to be used as a shelter during hazardous weather. The precise language stated, "This tent is a temporary structure, all occupants should evacuate this tent in threatening weather or if any condition occurs that raises doubt as to the safety of this tent." Further, one of Kilroy's owners admitted that he did not need to read the tent's safety warnings to know that the tent should be evacuated in threatening weather. He testified that the tent "didn't have to have warning labels. I still would've [known]-it's our obligation to some degree."
Moreover, in accordance with the City occupancy permit requirements, Kilroy had to have at minimum one staff person on site at all times to monitor the weather. In fact, Kilroy's owners admitted that they had a duty to monitor the weather.
And there was substantial evidence from which the jury could have found that if Kilroy had properly monitored the weather, it would likely have learned more than an hour before the tent became unmoored that a potentially dangerous storm was approaching St. Louis. A St. Louis University atmospheric sciences professor testified as an expert witness that around noon a severe thunderstorm had developed in central Missouri; that for the next two to three hours the storm progressed east-to-southeast along Interstate 70 before entering the St. Louis metropolitan area; that the storm's progress into St. Louis was a very well-publicized weather event; and that wind struck the tent at between 50 to 60 miles per hour. This testimony was based on weather data obtained from the National Weather Service that tracked the storm's progress into St. Louis and measured wind speed. This expert testimony was also supported by Federal Communications Commission ("FCC") records that severe weather reports interrupted regularly-scheduled local television programming to warn of the storm's approach in the hour or so before the tent's collapse. In light of this evidence, we reject Kilroy's argument that the jury's verdict on premises liability lacked adequate evidentiary support.
Nevertheless, Kilroy contends that it had no notice, and could not have been aware, of any dangerous condition because the City of St. Louis did three separate inspections of the tent and issued an occupancy permit certifying that it was safely installed. Kilroy relies on the testimony of City building inspector David Hiatt that he was unable to determine whether the tent could withstand 90 mile-per-hour winds, as required by the City Ordinance, because he had no equipment to perform such testing.
While these facts address Kilroy's installation of the tent, they do not relieve Kilroy of its duty to protect its invitees from the reasonably foreseeable dangers posed by this tent in a severe storm. Indeed, *496 Hiatt testified that when he reviewed Kilroy's permit and noticed it referenced a "garden/shelter," he told one of Kilroy's owners to take out the word "shelter" because the tent was not a stable structure, or shelter, and that in inclement weather, "everybody should be dispersed."
Point I is denied.
Point II: Negligence Per Se
In its second point, Kilroy asserts that there was insufficient evidence to support the jury's verdict on Respondents' claims of negligence per se. Specifically, Kilroy argues that there was no substantial evidence that Kilroy had notice the tent did not comply with the City Ordinance requiring that the tent be able to withstand 90-mile-per-hour winds. We reject this argument because we find that Respondents under a negligence per se theory did not need to prove Kilroy had notice the tent was not in compliance.
The violation of a statute, which is shown to be the proximate cause of the injury, is negligence per se. Dibrill v. Normandy Assocs., Inc. , 383 S.W.3d 77, 84 (Mo. App. E.D. 2012). Negligence per se arises when the legislature pronounces in a statute what the conduct of a reasonable person should be and the court adopts that statutory standard of care to define the standard of conduct of a reasonable person. Id. When a case based on negligence per se is submitted to the jury, the standard of care is omitted because the statutory violation itself constitutes a breach of the standard of care. Id. To establish a claim of negligence per se, the plaintiff must plead and prove the following four elements: (1) the defendant violated a statute; (2) the injured plaintiff was a member of the class of persons intended to be protected by the statute; (3) the injury complained of was of the kind the statute was designed to prevent; and (4) the violation of the statute was the proximate cause of the injury. Id. at 84-85.
In addition to deriving the standard of care for negligence per se from statutes, under some circumstances-such as those present here-the standard of care may be derived from a municipal ordinance. Id. at 84 (citing RESTATEMENT (SECOND) OF TORTS § 285 cmt. d (1965)). But for a claim of negligence per se to be based on a violation of an ordinance, the requirements of the ordinance must not conflict with the common law. Burns v. Frontier II Props. Ltd. P'ship , 106 S.W.3d 1, 4 n.2 (Mo. App. E.D. 2003) (citing Mediq PRN Life Support Servs. v. Abrams , 899 S.W.2d 101, 110 (Mo. App. E.D. 1994) ). Statutes, on the other hand, comprise state law and amend the common law of Missouri, and thus create no conflict. See Mediq , 899 S.W.2d at 110 ("[T]he state legislature has authority to enact statutes that override the common law of the state.").
Ordinances enacted to protect persons or property, conserve public health, or promote public safety are not considered as creating a new liability, but merely as defining the duty already owed at common law to the public or the person injured, Eckert v. Thole , 857 S.W.2d 543, 545 (Mo. App. E.D. 1993). A review of the City Ordinance demonstrates that it was the proper basis of Respondents' negligence per se claims because it was enacted to protect persons or property and promote public safety pursuant to-and not in conflict with-the common law. The City Ordinance required, "Tents must be supported to withstand a wind speed of ninety (90) miles per hour (mph) ...." Therefore, we conclude that Respondents' negligence per se claims based on the City Ordinance were proper.
Moreover, we find that Kilroy's citations to Mediq , *497 Thomas v. Barnes , 634 S.W.2d 554 (Mo. App. E.D. 1982), Corey v. Losse , 297 S.W. 32 (Mo. 1927), and Burns are inapposite and do not support its argument here. Mediq , Thomas , and Corey each held that a plaintiff could not make a submissible case of negligence per se where finding a duty based on an ordinance would have conflicted with Missouri common law.[1] But Kilroy does not claim that the common law principles at issue in those cases are at issue here, nor does Kilroy explain how the City Ordinance's application might have conflicted with the common law of Missouri.
As for Burns , which like this case dealt with an injury to an invitee, this Court's decision there did not address the question whether the ordinance at issue in that case was consistent with common law. See 106 S.W.3d at 4 n.2 (concluding "[s]everal questions are not before us," including the consistency of a building and coding safety ordinance with Missouri common law). Moreover, Burns dealt with a claim of instructional error,[2] not-like this case-with the sufficiency of the evidence, and Kilroy does not assert any instructional error in this case.
We now turn to Kilroy's argument that there was not sufficient evidence to support Respondents' negligence per se claims because it was not shown that Kilroy knew it was not in compliance with the City Ordinance. We reject this argument because as a matter of law Respondents did not need to prove that Kilroy had such notice.
Applying the case-law elements laid out above, we find that Respondents to prove their claims of negligence per se had to show (1) there was, in fact, a violation of the City Ordinance; (2) the injured Respondents and Decedent were members of the class of persons intended to be protected by the City Ordinance; (3) the injuries complained of were of the kind the City Ordinance was designed to prevent; and (4) the violation of the City Ordinance was the proximate cause of the injury.
Critically, no element of the negligence per se claims at issue here requires proof that Kilroy had notice or knowledge, actual or constructive, that the tent was not in compliance with the City Ordinance. Likewise, the verdict director for the negligence per se claims in this case stated only, *498 Your verdict must be for plaintiffs if you believe:
First, defendant was using a 40 x 60 tent for its business purposes that was not able to withstand a wind speed of ninety (90) miles per hour (mph), and
Second, such conduct directly caused or directly contributed to cause damage to plaintiffs.
Therefore, we find that it is of no consequence whether there was evidence that Kilroy knew its tent was not compliant with the City Ordinance, and we will not convict the trial court of error.
Point II is denied.
Conclusion
For the reasons stated above, we affirm the judgment of the trial court.
Lawrence E. Mooney, J., and Gary M. Gaertner, Jr., J., concur.

Mediq , Thomas , and Corey were all landlord-tenant or lessor-lessee cases. In Mediq , 899 S.W.2d at 109-10, although it was undisputed that the defendant violated the St. Louis County Electric Code, this Court held that the violation alone-without proof of the defendant's actual or constructive notice of the violation-could not support a claim for negligence per se because that would contradict Missouri's common law principle that a building owner cannot be held liable for a latent defect unless the owner's actual or constructive knowledge of the defect is demonstrated. Similarly, Thomas and Corey dealt with ordinances that violated, respectively, the common-law principles that "the owner of leased property could not be held liable for injuries sustained on the leased premises," 634 S.W.2d at 555, and that the obligation to repair is on the tenant. 297 S.W. at 33.

Burns upheld a trial court's decision to submit a negligence per se verdict director that required the element of notice consistent with an applicable Missouri Approved Instruction for claims of premises liability. See 106 S.W.3d at 3-5 (holding that where the trial court gave an instruction based on the elements in MAI 22.03, there was no error because "when negligence per se is the basis of liability ... the MAI instruction for that action is still applicable; only the element of negligence, or breach of the standard of care, is removed"). Respondents' negligence per se claims were submitted using a different instruction based not on premises liability, but on a theory of general negligence-which, on the contrary, did not require a showing of notice or knowledge.