

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **MICHELLE EICKHOFF, ET AL.,** | ) | |
| | ) | |
| **Appellants,** | ) | **WD83433** |
| | ) | |
| **v.** | ) | **OPINION FILED:** |
| | ) | **September 15, 2020** |
| **DOUGLAS GELBACH, ET AL.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**Appeal from the Circuit Court of Johnson County, Missouri**
The Honorable R. Michael Wagner, Judge

Before Division Three:  Gary D. Witt, Presiding Judge, Lisa White Hardwick, Judge and
Thomas N. Chapman, Judge

Michelle Eickhoff and John Eickhoff[1] (collectively "the Eickhoffs") appeal from the judgment of the Circuit Court of Johnson County entering summary judgment in favor of Douglas Gelbach and Rhonda Gelbach[2] (collectively "the Gelbachs") against the Eickhoffs on claims of general negligence, negligence *per se*, premises liability, and loss of consortium.  We reverse and remand.

---

[1] Because the Eickhoffs share a last name, we refer to them by their first name.  The Eickhoffs' son, Tyler Eickhoff, will likewise be referred to by his first name.  No familiarity or disrespect is intended.
[2] Similarly, the Gelbachs share a last name, and we refer to them individually by first name.  No familiarity or disrespect is intended.

The Gelbachs own a significant number of residential rental properties, both homes and apartments, including the house that is the subject of this litigation, located at 117 West Russell in Warrensburg, Missouri ("Property"). On February 18, 2016, Tyler Eickhoff, Charles Bollmeyer, Austin May, and Calvin Rucker (collectively "the Tenants") entered into a lease of the Property for a term of August 1, 2016, through July 31, 2017. Between 2014 and 2016, the Gelbachs made extensive repairs, modifications, and improvements to the Property, which were completed before the lease term began. The Tenants took possession of the Property on August 1, 2016. On October 30, 2016, Michelle was visiting her son, Tyler, at the Property and fell down a flight of stairs located inside the Property causing injury.

The lease provided in relevant part:

> 10. **Acceptance and Return of Premises:** The Tenant's entry into possession of the premises shall be considered conclusive evidence that the premises and the building of which it forms a part are in good and satisfactory order and repair at such time. It is agreed that there have been no promises to decorate, alter, repair, or improve the premises, or representations as to the condition and repair of this premises, except as are set forth herein, and that the Tenant agrees unless otherwise stated herein to occupy the premises in its "as-is and clean" condition. The Tenant agrees that the premises are in a tenantable condition . . . .

> 11. **Entry of Premises:** Landlord reserves the right to enter upon the leased premises at all reasonable hours for the purpose of inspecting the same, or of making repairs, additions or alterations to the building in which the leased premises are located . . . .

---

[3] "When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered." *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The facts contained in affidavits or otherwise in support of a party's motion are accepted "as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id*.

12. **Locks:** Tenant understands and agrees that he shall not, in any event or circumstance, install or cause to be installed on the premises additional locks of whatever kind, nor make or cause to be made, any changes in or to the existing locks.

13. **Rules and Regulations:**

(b) Tenant … shall not decorate, make repairs, structural alterations in or additions to the buildings or equipment on the leased premised [sic] without the prior, express and written consent of Landlord. Decorations include, but are not limited to painting, wallpapering, and hanging of murals or posters.

(c) Will give to the Landlord prompt written notice of … any defects … which come to Tenants notice in connection with said premises, so that such defects may be corrected and the Landlord shall have a reasonable time thereafter to make repairs.

When the Tenants took possession of the property from the Gelbachs, the staircase where Michelle fell did not have a handrail installed. Douglas and the Tenants had a conversation regarding the lack of a handrail and the installation of one, and it was agreed between them that a handrail would not be installed.

Prior to the lease between the Gelbachs and the Tenants, the City of Warrensburg adopted the 2012 International Residential Code ("Code"), which, regarding stairways, provided that "[h]andrails shall be provided on at least one side of each continuous run of treads or flight with four or more risers." INTERNATIONAL RESIDENTIAL CODE, R311.7.8 (2012); *See* Warrensburg Code of Ordinances Sec. 6-19 (2016) (adopting the Code). Michelle's fall occurred on a flight of stairs with more than four risers, on which no handrail had been installed on either side. Subsequent to the fall, on or about March 2018, Douglas installed a handrail on those stairs.

3

On March 5, 2018, the Eickhoffs filed a petition asserting four claims against the Gelbachs: (Count I) general negligence, (Count II) negligence *per se*, (Count III) premises liability, and (Count IV) loss of consortium. On March 1, 2019, the Gelbachs moved for summary judgment on all counts. After substantial briefing, the circuit court heard argument on September 3, 2019, and subsequently entered summary judgment in favor of the Gelbachs on December 12, 2019, dismissing the case with prejudice. This appeal followed.

**Standard of Review**

The Missouri Supreme Court has outlined our applicable standard of review for summary judgment:

> The trial court makes its decision to grant summary judgment based on the pleadings, record submitted, and the law; therefore, this Court need not defer to the trial court's determination and reviews the grant of summary judgment *de novo*. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993); Rule 74.04. In reviewing the decision to grant summary judgment, this Court applies the same criteria as the trial court in determining whether summary judgment was proper. *Id.* Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law. *Id.* The facts contained in affidavits or otherwise in support of a party's motion are accepted "as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* Only genuine disputes as to material facts preclude summary judgment. *Id.* at 378. A material fact in the context of summary judgment is one from which the right to judgment flows. *Id.*

> A defending party . . . may establish a right to summary judgment by demonstrating: (1) facts negating any one of the elements of the non-movant's claim; (2) "that the non-movant, after an adequate period for discovery, has not been able and will not be able to produce sufficient evidence to allow the trier of fact to find the existence of any one" of the elements of the non-movant's claim; or (3) "that there is no genuine dispute as to the existence of the facts necessary to support movant's properly

4

pleaded affirmative defense." *Id.* at 381. Each of these three methods individually "establishes the right to judgment as a matter of law." *Id.*

*Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452-53 (Mo. banc 2011).

## Discussion

The Eickhoffs raise two points on appeal. First, the Eickhoffs assert the circuit court erred in granting summary judgment to the Gelbachs because there was a material issue of fact regarding whether the Gelbachs retained partial or shared control of the house. Second, the Eickhoffs argue the circuit court erred in granting summary judgment because there was a genuine issue of material fact as to whether the Gelbachs had knowledge of the dangerous condition created by the handrail in that the Gelbachs "are held to have knowledge of a dangerous condition that is a violation of an ordinance, and that the [T]enants had no knowledge of the ordinance or the dangerous condition." We address each in turn.

## Point One

In their first point on appeal, the Eickhoffs assert there is a genuine issue of material fact as to whether the Gelbachs retained partial or shared control of the property. "The general rule, pursuant to Missouri case law, is that a landlord does not owe a duty to his tenant, and is not liable for personal injuries, received by a tenant or by a tenant's invitee, caused by the dangerous conditions of the premises." *Dean v. Gruber*, 978 S.W.2d 501, 503 (Mo. App. W.D. 1998). There are three recognized exceptions to the general rule, which include: "(1) when the landlord had knowledge of a dangerous condition, which condition is not discoverable by the tenant, and the landlord fails to make disclosure; (2)

5

when the injury occurs in a common area; and (3) when a landlord is responsible for making repairs, but negligently fails to do so." *Id.* (citing *Newcomb v. St. Louis Office for Mental Retardation & Developmental Disabilities Res.*, 871 S.W.2d 71, 74 (Mo. App. E.D. 1994)).[4] The Eickhoffs allege that the third exception is applicable to the first point in that the Gelbachs as landlord were responsible for making repairs and the Gelbachs had retained some level of control over the Property.

"[A] landlord is under no obligation to a tenant to repair unless there is a contract which creates a duty to repair[,]" but when the landlord retains partial control of the property to make repairs, then the landlord is obligated to make such repairs and keep the property in a reasonably safe condition for its intended use. *Dean*, 978 S.W.2d at 503. The dispositive issue in cases where tenants allege the landlord assumed a duty to make repairs is "whether the landlord did retain control of the particular portion of the premises under consideration. This is because the foundation of the landlord's duty is based upon his retention of control." *Id.* at 504. However, "[t]here must be something more—some additional fact or facts from which a jury could infer that under the agreement the tenant gave up and surrendered his right to exclusive possession and control and yielded to the landlord some degree or measure of control and dominion over the premises; some substantial evidence of a sharing of control as between landlord and tenant." *Lemm v. Gould*, 425 S.W.2d 190, 195 (Mo. 1968).[5] A landlord is liable for damages if "he retained

---

[4] The Eickhoffs and the Gelbachs agree that the stairwell is not a common area.
[5] The Eickhoffs argue that because the Gelbachs installed a handrail on their own initiative in 2018, this demonstrates the Gelbachs had control of the Property. However, this is irrelevant as the issue is not whether the Gelbachs had control over the Property in 2018, which was more than one year after the tenants' lease expired, the issue is whether the Gelbachs had control over the Property during the tenants' lease term.

6

a general supervision over the premises for a limited purpose such as the making of repairs or alterations, and the right to enter the premises and make repairs upon his own initiative . . . ." *Id.*

In *Lemm*, a child, Michael Lemm, fell from a porch located on the fourth floor of an apartment building when he climbed through an opening between a baluster and a wooden column. *Id*. at 191. He brought suit against his landlord, Gould, alleging that the landlord had a duty to limit the opening so that the child could not have fallen through. *Id*. at 192-93. The agreement between Gould and the Lemms provided that the landlord would provide, furniture, utilities, and repairs. *Id*. at 194. Gould retained a key for emergencies and advised the Lemms that the landlord "would use this key to enter the apartment 'to do any repairs [Gould] might think necessary.'" *Id*. Gould accessed the Lemms' apartment to make repairs at the request of the Lemms, but Gould also made repairs of his own initiative without consulting the Lemms. *Id*.at 194. Thus, evidence of Gould's "free access to the premises" for the purpose of making repairs established "a duty to maintain the porch in a reasonably safe condition for the use intended." *Id*. at 195, 197.

In *Stephenson v. Countryside Townhomes, LLC*, 437 S.W.3d 380, 389 (Mo. App. E.D. 2014), the court held that the issue of control was in dispute, and thus, properly placed before the jury. In a leased apartment, J.S. fell from a second-story bedroom window resulting in injury. *Id*. at 382. The window was missing a lock, and the screen and storm window had been removed. *Id*. at 382-83. The landlord did not inspect the property or initiate repairs. *Id*. at 389. The tenants were responsible for contacting the landlord about any repairs, and when the maintenance crew arrived the tenants would let them into the

apartment. *Id*. The lease prohibited tenants from making any "alterations, additions, or modifications." *Id*. at 386. The landlord retained a key for emergencies and inspections, but access was limited to certain hours of the day and "by agreement with tenant" or "after notifying tenant." *Id*. Based on these factors, the Eastern District of the Court held that the issue of control was in dispute. *Id*.

Unlike in *Lemm*, the record demonstrates that the Gelbachs never entered the Property to make repairs on their own initiative. But just as in *Stephenson*, the Gelbachs required tenants to make maintenance requests to the landlord and Gelbachs never entered the Property without notice or by express permission of the tenants. Further, they retained a key and prevented their tenants from making alterations or repairs themselves. Also, the tenants and the Gelbachs had a discussion regarding the installation of a handrail. The Eickhoffs characterize this discussion as an exercise of "joint control," but the Gelbachs insist this decision demonstrates that the Gelbachs deferred entirely to the tenants on the installation of the handrail.

The Gelbachs rely on *Dean*, where we held that there were not facts alleged from which a juror could infer the landlord's control of the premises. 978 S.W.2d at 505. However, the instant case is readily distinguishable. In *Dean*, the landlord "did not retain a key, or reserve the right to inspect the premises, except with the permission of the tenant." *Id*. Because the Gelbachs retained a key to the Property and "reserve[d] the right to enter upon the leased premises at all reasonable hours for the purpose of inspecting the [Property], or of making repairs, additions or alterations to the building in which the leased

premises are located," the Gelbachs reserved the legal right to enter the apartment at all reasonable hours without permission, even if in practice they never exercised this right.

We conclude, just as the Eastern District of this Court did in *Stephenson*, that a genuine issue of material fact exists as to whether the Gelbachs exercised control over the Property.

However, we will affirm a grant of summary judgment if it can be sustained on any theory as a matter of law. *Guy v. City of St. Louis*, 829 S.W.2d 66, 69 (Mo. App. E.D. 1992) ("We will not reverse a correct result even where granted for the wrong reasons, and will sustain the trial court's entry of summary judgment even if the theory on which we dispose of this case was not presented to the court."). Therefore, we must determine if the Eickhoffs' claims fail as a matter of law.

The circuit court, relying on *Thomas v. Barnes*, 634 S.W.2d 554 (Mo. App. E.D. 1982), concluded that the common law duties and liabilities of a landlord cannot be altered by city ordinances, which would foreclose Michelle's claim of negligence *per se*. Indeed, local governments may adopt ordinances, but those ordinances must be in accordance with the Constitution, statutes, *and the common law*. *Id*. at 555. While a statutory change is sufficient to change the common law, an ordinance generally has no such effect. *McKinney v. H.M.K.G. & C., Inc.*, 123 S.W.3d 274, 278 (Mo. App. W.D. 2003). However, in *Martinez v. Kilroy Was Here LLC*, 551 S.W.3d 491, 496 (Mo. App. E.D. 2018), the court recognized that "[o]rdinances enacted to protect persons or property, conserve public health, or promote public safety are not considered as creating a new liability, but merely as defining the duty already owed at common law to the public or the person injured." *Id.*

9

To establish a claim of negligence *per se*, the plaintiff must plead and prove the following four elements: "(1) . . . a violation of the ordinance; (2) the injured plaintiff was a member of the class of persons intended to be protected by the ordinance; (3) the plaintiff's injury is of the type the ordinance was designed to prevent; and (4) the violation of the ordinance was the proximate cause of the injury." *Blackwell v. CSF Properties 2 LLC*, 443 S.W.3d 711, 716 (Mo. App. E.D. 2014).

In *Martinez*, the city of St. Louis passed an ordinance that provided: "Tents must be supported to withstand a wind speed of ninety (90) miles per hour (mph) . . . ." 551 S.W.3d at 496 (quoting St. Louis City Ordinance 68788, § 109.3.1, Note A). Kilroy hosted customers following a St. Louis Cardinals professional baseball game when high winds resulting from a severe thunderstorm caused a tent to break free from its moorings. *Id*. at 494. The incident resulted in serious injuries to some and killed one customer. *Id.* Following a jury trial, the jury rendered a verdict in favor of the plaintiffs and against the defendants. *Id*. at 493. The court held that the jury's verdict was supported by the evidence, because the plaintiffs met their burden to demonstrate that (1) Kilroy violated an ordinance; (2) the victims were members of the class of persons intended to be protected by that ordinance; (3) the injuries complained of were of the kind the ordinance was designed to prevent; and (4) the ordinance violation was the proximate cause of the injury. *Id*. at 497.

Just as in *Martinez*, the Eickhoffs assert that the Warrensburg Municipal Code required the installation of a handrail and that the Gelbachs violated that ordinance by leasing the premises to them without a handrail on that stairway and by not installing a handrail prior to the fall. They similarly contend the ordinance was intended to protect

10

tenants and their invitees, and that the ordinance was designed to prevent injuries sustained from falls. Furthermore, the Eickhoffs contend that the lack of a handrail was the proximate cause of the injury and that Michelle, an invitee of the tenants, was an intended beneficiary of the ordinance. Therefore, we find that the Eickhoffs have alleged sufficient facts to raise a *prima facie* case of negligence *per se*. The Eickhoffs also raised claims of premises liability and general negligence, and because the ordinances define the duty owed by a landlord to a tenant, the circuit court erred in finding under these facts that those claims fail as a matter of law.[6] The lease provisions which not only give Gelbachs the right to enter the premises to make repairs but also specifically prohibit the tenants from making repairs, raises a genuine issue of material fact as to the requisite control of the premises.

There are genuine issues of material fact as to whether the Gelbachs had sufficient control of the premises to owe a duty to the Tenants' invitee, Michelle Eickhoff, giving rise to liability for the dangerous condition of the property. Point One is granted.

## Point Two

In their second point on appeal, the Eickhoffs argue the first exception to the general rule of landlord liability: "(1) when the landlord had knowledge of a dangerous condition, which condition is not discoverable by the tenant, and the landlord fails to make disclosure," *Dean*, 978 S.W.2d at 503, applies in the instant case asserting that the Gelbachs knew or should have known the Warrensburg Municipal Code required the Gelbachs to install a handrail but did not disclose the Code's requirement to the Tenants.

---

[6] Because the Eickhoff's claim for loss of consortium rises and falls with the claims of general negligence, negligence *per se*, and premises liability, we need not address that claim.

11

Essentially, the Eickhoffs argue that the Gelbachs had a duty to inform the Tenants that the Warrensburg Municipal Code imposed a duty on property owners to install handrails on stairways consisting of four or more risers. There is no authority for such a proposition and the argument cannot withstand scrutiny. First, the question is the knowledge of the *dangerous condition*, not the knowledge of the ordinance that required a handrail to be installed. Second, tenants, like landlords, are responsible for knowing the law. *See generally*, *Reeder v. Bd. of Police Comm'rs. of Kan. City, Mo.*, 800 S.W.2d 5, 6 (Mo. App. W.D. 1990) (for the proposition that ignorance or mistake of the law is no excuse for its violation.).

Furthermore, the first exception to the general rule regarding a landlord's liability for tenants' or invitees' injuries applies when the landlord has knowledge of a dangerous condition, *which is not discoverable by the tenant*, and the landlord fails to disclose that dangerous condition. The Eickhoffs assert that Gelbachs' knowledge of the municipal code's requirement for the installation of a handrail constitutes a dangerous condition in and of itself. However, the provisions of the code were not the dangerous condition, the lack of a handrail constitutes the dangerous condition at issue. Because the Tenants had actual knowledge that the stairway lacked a handrail and discussed this with Douglas when they were moving into the Property, they cannot claim that the dangerous condition was not discoverable by them. The first exception is inapplicable, and Point Two is denied.

## Conclusion

We reverse and remand for further proceedings consistent with this opinion.

_____
Gary D. Witt, Judge

All concur