

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, ex rel. ERIC S. SCHMITT, | ) ) | |
| Relator, | ) | |
| v. | ) | WD84866 |
| | ) | |
| THE HONORABLE KEVIN CRANE, Circuit Judge of Callaway County, and MEGAN MORSE, Circuit Clerk of Callaway County, | ) ) ) ) ) | FILED: December 28, 2021 |
| Respondents. | ) | |

### Original Proceeding on Petition for Writ of Certiorari

### Before Writ Division: Alok Ahuja, P.J., and Mark D. Pfeiffer and W. Douglas Thomson, JJ.

The Circuit Court of Callaway County issued a writ of habeas corpus to petitioner Michael Isreal. In its judgment, the circuit court concluded that Isreal had fully served sentences imposed on him in 1974 and 1978, and was therefore entitled to be discharged from State custody. The State filed a Petition for a Writ of Certiorari in this Court, asking that we review the circuit court's judgment. Because we conclude that the circuit court correctly granted habeas relief to Isreal, we refuse to quash the record of the circuit court proceedings.

### Factual Background

As the State acknowledges, the relevant facts are not in dispute.

In 1974, when he was sixteen years old, Michael Isreal was convicted in the Circuit Court of the City of St. Louis of robbery in the first degree by means of a dangerous and deadly weapon. Isreal was sentenced in November 1974 to a term of

20 years' imprisonment. While Isreal was incarcerated for his robbery conviction, he was convicted of manslaughter in the Circuit Court of Cole County for killing a fellow inmate. Isreal was sentenced in January 1978 to ten additional years of imprisonment, to run consecutively to his twenty-year robbery sentence.

Isreal escaped from Missouri custody on June 3, 1978. He apparently escaped while he was in St. Louis on a writ of habeas corpus *ad testificandum* in connection with post-conviction relief proceedings.

Isreal fled to California. On December 11, 1979, he pleaded guilty to murder in Alameda County, California. Isreal was given a sentence of 25 years to life, "to run immediately and concurrently with the sentence which the defendant is obligated to serve in the State of Missouri."

On February 21, 1980, the Department of Corrections (DOC) sent a warrant to the California prison where Isreal was then incarcerated. The warrant noted that Isreal had escaped from a Missouri penitentiary, and requested that he "be retaken and held to be returned to the said Penitentiary."

Under the California Supreme Court's decision in *In re Stoliker*, 315 P.2d 12 (Cal. 1957), when a California court orders that a criminal sentence be served concurrently with a sentence imposed by another jurisdiction, California correctional officials are obligated to transfer the defendant to the other jurisdiction, if necessary to permit the defendant to concurrently serve his California and non-California sentences.

Following Isreal's California conviction, California authorities and Isreal began a decades-long effort to have DOC accept Isreal's return to Missouri, so that he could resume service of his Missouri sentences (to which his California sentence was concurrent). As required by *Stoliker*, California correctional authorities corresponded with DOC beginning in 1980, and offered to transfer Isreal to DOC. Although the DOC's "Order for Arrest of Escaped Prisoner" had asked that "Isreal

be retaken and held to be returned to the [Missouri State] Penitentiary," for almost forty years the DOC refused California's offers to return Isreal to Missouri custody.

In a November 25, 1998 letter to Isreal, a California correctional official summarized the communications between California and Missouri over the prior two decades:

> Warden Ayers is in receipt of your request to transfer to Missouri Department of Corrections. He has asked me to research and respond to your request. On February 8, 1980, a letter was sent at your request to Missouri Department of Corrections requesting transfer so that you could serve your unexpired Missouri State prison term. Missouri State Penitentiary responded on February 21, 1980 and a copy of this response was sent to you. Their response in part was, "We do not wish to assume custody of Isreal until such time as he completes his California sentence or can be paroled to our detainer."
>
> Over the years several requests have been sent to Missouri Department of Corrections advising them of your request to be returned to serve the remainder of your term. Each response from Missouri Department of Corrections has been negative. They repeatedly responded that they would accept custody if and when you complete your California sentence or can be paroled to their detainer. Missouri Department of Corrections last responded to your request on August 30, 1996. I have included six letters for your review.

The record contains a similar letter written by California authorities to Isreal in 1994, explaining that Missouri had been asked to take custody of Isreal multiple times, but had consistently refused. The 1994 letter informed Isreal that, despite California authorities' obligation to comply with the *Stoliker* decision, "California will not just send you to Missouri if Missouri is not willing to accept you."

In an effort to compel DOC to accept his return, Isreal filed a petition seeking habeas relief, or in the alternative a writ of mandamus, in the Circuit Court of Cole County on February 2, 1989. Isreal requested that the circuit court order DOC to accept his return. The circuit court denied relief, finding that Isreal's writ petition was "frivolous and malicious":

3

> To the extent the petition is a request for any habeas corpus the same is denied for the reason that the movant is not within the geographic jurisdiction of this court; to the extent it is a petition for writ of mandamus, permission to proceed as a poor person is denied for the reason that the same sets forth no set of facts which, if true, entitle him to such writ; further the petition is found to be frivolous and malicious, in that movant's likelihood for success in the prosecution of this case is slight at best.

On May 16, 1989, the Missouri Supreme Court likewise denied Isreal relief by way of a writ of habeas corpus, mandamus, or prohibition.

Isreal filed a petition for writ of habeas corpus in the California state courts, which was denied both in the Superior Court, and by the California Supreme Court.

Having failed to obtain relief from the Missouri and California state courts, Isreal then filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of California in 1997. The District Court denied Isreal's petition.

The Ninth Circuit affirmed the District Court's denial of habeas relief. *Isreal v. Marshall*, 125 F.3d 837 (9th Cir. 1997). The Ninth Circuit noted that, consistent with *Stoliker*, California authorities had offered to transfer Isreal to Missouri, but that "Missouri flatly refused to accept appellant into custody under any circumstances." *Id.* at 840. The Court also noted that "Missouri's refusal to accept custody effectively renders [Isreal's] California and Missouri sentences consecutive." *Id.* at 839.

The Ninth Circuit's opinion assumed that Isreal's "right to be *tendered* to Missouri for transfer" under *Stoliker* created a liberty interest protected by the Due Process Clause. *Id.* The Court found, however, that Isreal had been given the process that was due, since California authorities had *offered* to return Isreal to Missouri. *Id.* at 840. The Court noted that, in light of Missouri's refusal to accept him, "there appears to have been nothing else California could have done in order to facilitate [Isreal's] return to Missouri." *Id.* The Ninth Circuit's opinion emphasized

4

that "[w]e do not address whether Missouri's refusal to accept [Isreal] violated his rights under Missouri law or whether any such violation would pose federal constitutional problems." *Id.* at 839 n.1.[1]

In connection with his federal habeas petition, Isreal's counsel obtained an affidavit from Donna Coleman, who was then DOC's General Counsel. Coleman's affidavit stated that "Missouri does not have a specialized procedure in place to respond to a request from California for a so-called '*Stoliker* transfer.'" Coleman's affidavit stated that "[o]ut-of-state prisoners who have time remaining on a Missouri sentence are not normally accepted by Missouri until paroled from the other jurisdiction." Despite this general practice, Coleman also stated that,

> [a]lthough no formal policy exists at this time to respond to a *Stoliker* request, further review by the appropriate decision-making bodies in Missouri may result in a determination that Missouri would be willing to accept an inmate prior to parole eligibility in California, in order to permit concurrent service of the California term.

Coleman's affidavit did not describe the substantive standards which "the appropriate decision-making bodies in Missouri" would apply in deciding whether to accept an out-of-state prisoner's return. Although an *ad hoc* process to accept the return of prisoners like Isreal apparently existed, Coleman stated that "[t]o my knowledge, no such review has been undertaken regarding Michael Isreal" – despite California's repeated requests that Missouri accept Isreal's return, and despite the litigation commenced by Isreal in state and federal courts in Missouri and California.

---

[1]     *Isreal* is not the only appellate decision to have addressed issues arising because a State refused to accept a "*Stoliker* transfer" from California correctional authorities. *See also*, *e.g.*, *Aycox v. Lytle*, 196 F.3d 1174 (10th Cir. 1999); *Breeden v. N.J. Department of Corrections*, 625 A.2d 1125 (N.J. 1993); *Wallace v. State*, 612 P.2d 284 (Okla. Crim. App. 1980); *Chalifoux v. Commiss'r of Corrections*, 377 N.E.2d 923 (Mass. 1978). Because those decisions are fact-specific, and are dependent on the procedural and substantive laws of the particular States involved, they are of limited relevance here.

The record reflects that California authorities made at least one more request that Missouri accept Isreal's return, in 2004. In a responsive letter on December 28, 2004, DOC Legal Counsel Susan K. Glass continued Missouri's twenty-five-year history of declining custody:

> Please be advised that the State of Missouri will accept custody of this offender if and when California paroles or discharges Mr. Isreal to the Missouri detainer. The State of Missouri has no interest in accepting a transfer prior to that time. Please make appropriate notifications pursuant to the Missouri detainer if and when California determines to parole or discharge Mr. Isreal.

Isreal was granted parole on his California sentence in 2019, after serving approximately forty years. On April 18, 2019, Missouri began extradition proceedings to have Isreal returned to Missouri. Isreal was ordered to be transferred to DOC on March 4, 2020. At that time, DOC calculated Isreal's mandatory release date to be May 31, 2038 (when Isreal would be eighty years old). DOC gave Isreal credit for the period from his initial jailing on March 22, 1974, through the issuance of an "escape warrant" on June 23, 1978. DOC excluded from the calculation the 15,230 days between the issuance of the escape warrant in 1978, and Isreal's physical return to DOC custody on March 13, 2020. A DOC memorandum explained that "[w]hen an inmate escapes from custody such escape shall interrupt the sentence. The interruption shall continue until such person is returned to the Missouri Department of Corrections."

Isreal filed the current habeas action in the Circuit Court of Callaway County on April 15, 2020 (*Michael Isreal v. Doris Falkenrath*, No. 20CW-CV00435). On November 19, 2020, Isreal's counsel filed an amended petition, to which the State responded. After the case had been fully briefed, Isreal was released on parole. He was scheduled to remain on parole until 2038.[2]

---

[2]  The fact that Isreal was released on supervised parole did not have the effect of mooting this habeas proceeding, because, "in the context of interpreting Missouri's

6

On September 13, 2021, the circuit court held an evidentiary hearing, at which the court orally granted Isreal's petition for habeas relief. The court entered a written judgment granting the writ on the same day.

The State filed its Petition for Writ of Certiorari in this Court on October 4, 2021. We issued a writ of certiorari the next day, in which we ordered that the Circuit Clerk of Callaway County provide this Court with certified copies of the relevant records from the habeas proceeding. We also requested that Respondent file an answer to the Petition. The parties subsequently filed supplemental briefing, and presented oral argument.

## Standard of Review

"Rule 91.01(b) provides that '[a]ny person restrained of liberty within this state may petition for a writ of habeas corpus to inquire into the cause of such restraint.' Consideration of a petition for writ of habeas corpus is limited to determining the facial validity of the confinement." *State ex rel. Koster v. McElwain*, 340 S.W.3d 221, 231 (Mo. App. W.D. 2011) (citations and internal quotation marks omitted). "[T]he 'facial validity' of confinement is determined on the basis of the entire record of the proceeding in question. The essential question to be determined is whether a review of the entire record establishes that a habeas petitioner is being deprived of his liberty without due process of law." *State ex rel. Koster v. Oxenhandler*, 491 S.W.3d 576, 589 (Mo. App. W.D. 2016) (citations omitted).

"Because there is no appeal from the trial court's grant of a habeas petition, if the State seeks to have the record of the writ of habeas corpus quashed, it does so

---

habeas statute, . . . 'any restraint which precludes freedom of action is sufficient, and actual confinement in jail is not necessary.'" *State ex rel. Fleming v. Mo. Bd. of Probation and Parole*, 515 S.W.3d 224, 228-29 n.6 (Mo. 2017) (quoting *Hyde v. Nelson*, 229 S.W. 200, 202 (Mo. 1921)). None of the parties has contended that Isreal's parole rendered this proceeding moot.

7

by filing a petition for writ of certiorari." *State ex rel. Nixon v. Kelly*, 58 S.W.3d 513, 516 (Mo. 2001) (citation omitted). "'When the Attorney General seeks a writ of certiorari, the writ issues as a matter of course and of right.'" *Id.* (citation omitted). "The writ of certiorari 'presents only questions of law on the record brought up by the return and does not permit consideration of issues of fact.'" *Id.* (citation omitted). In our review, we ask "whether the [circuit] court exceeded its authority to grant habeas relief or abused its discretion in issuing the writ of habeas corpus." *McElwain*, 340 S.W.3d at 231 (citation omitted). "An abuse of discretion occurs when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Hancock v. Shook*, 100 S.W.3d 786, 795 (Mo. 2003) (citation omitted).

If we conclude in a certiorari proceeding that the circuit court erred, we will "reverse" by quashing the record of the circuit court proceedings (including the judgment granting habeas relief), either in whole or in part; on the other hand, if we conclude that the court correctly granted habeas relief, we will "affirm" its judgment by refusing to quash the record. *State ex rel. Koster v. Green*, 388 S.W.3d 603, 607 (Mo. App. W.D. 2012).

## Discussion

The State argues that the circuit court exceeded its authority and abused its discretion in granting Isreal habeas relief, because the running of Isreal's Missouri sentences was suspended for forty-two years from the date of his escape on June 3, 1978, until his return to Missouri custody on March 13, 2020. We disagree.

This case involves events which occurred over multiple decades. The question arises as to which version of the relevant statutes should be applied in deciding the issues presented. The State argues that the statutes in effect at the time of Isreal's underlying offenses, and at the time of his escape from Missouri

8

custody, are materially identical, and should govern. Isreal agrees. Given the parties' agreement on this point, we apply the statutes in effect between 1974 and June 3, 1978, without independently addressing the question.

The State argues that the statute governing Isreal's right to credit for his California incarceration is § 546.615, RSMo Supp. 1971, which provided:

> 1. When a person has been convicted of a criminal offense in this state
>
> > (1) The time spent by him in prison or jail subsequent to the date of his sentence and prior to his delivery to the state department of corrections shall be calculated as a part of the sentence imposed on him; and
> >
> > (2) The time spent by him in prison or jail prior to his conviction and the date on which sentence is pronounced may, in the discretion of the judge pronouncing sentence, be calculated as a part of the term of the sentence imposed upon him.
>
> 2. When the time spent in prison or jail is calculated as a part of the term of the sentence under the provisions of subsection 1, the time so spent in prison or jail shall . . . be deducted from the term of the sentence.
>
> 3. It is the duty of the officer required by law to deliver a convicted person to the state department of corrections to endorse upon the commitment papers the length of time spent by the person in a prison or jail subsequent to the date of his sentence and prior to his delivery to the state department of corrections, and if, by the terms of the sentence, the time spent in prison or jail prior to conviction and sentence is to be calculated as a part of the term, the officer shall also endorse upon the commitment papers the length of time spent in prison or jail prior to the person's conviction and sentence.

(Provisions similar to those which appeared in § 546.615, RSMo Supp. 1971 now appear in § 558.031, RSMo Cum. Supp. 2021.)

There is a fundamental problem with the State's reliance on § 546.615, RSMo Supp. 1971, however. That statute only specifies the credit which an offender shall receive against his sentence for time during which the offender is incarcerated "subsequent to the date of his sentence and prior to his delivery to the state

9

department of corrections," or "prior to his conviction and the date on which sentence is pronounced." §§ 546.615.1(1), .1(2), RSMo Supp. 1971. Notably, § 546.615, RSMo Supp. 1971 does not itself require that an offender receive credit against his or her sentence for time served after the offender's initial delivery to DOC. This clearly demonstrates that the statute is not all-encompassing, but merely addresses the treatment of "jail time" prior to an offender's delivery to DOC. But this case does not involve jail-time credit. The issue in this case is not whether Isreal should receive credit for time during which he was incarcerated prior to his delivery to the DOC, or prior to his conviction and sentencing. The issue _here_ is whether Isreal is entitled to credit against his Missouri sentences for the time he was incarcerated in California *subsequent to* his Missouri conviction and sentencing, and *subsequent to* his delivery to DOC. Section 546.615, RSMo Supp. 1971 simply does not address the issue we face here.[3]

Subsequent to Isreal's escape from Missouri custody, Missouri _did_ adopt a statute which would address the precise situation involved here. Section 558.031.4, RSMo 1978, contains the following provision which became effective on January 1, 1979 – _after_ Isreal's Missouri offenses, _after_ his Missouri convictions and sentencings, and _after_ his escape from Missouri custody:

> If a person convicted of a crime escapes from custody, such escape shall interrupt the sentence. The interruption shall continue until such person is returned to the correctional center where the sentence was being served, or in the case of a person committed to the custody of the department of corrections, to any correctional center operated by the department of corrections. An escape shall also

---

[3]     The cases cited by the State similarly involve questions of credit for time served prior to an offender's conviction, sentencing, and initial delivery to DOC. *See Harkins v. Lauf*, 532 S.W.2d 459, 463 (Mo. 1976); *Seevers v. State*, 766 S.W.2d 780, 782 (Mo. App. W.D. 1989); *State ex rel. Blackwell v. Sanders*, 615 S.W.2d 467, 469 (Mo. App. E.D. 1981); *Umphenour v. State*, 535 S.W.2d 579, 580 (Mo. App. 1976).

interrupt the jail time credit to be applied to a sentence which had not commenced when the escape occurred.[4]

The State acknowledges that § 558.031.4, RSMo 1978 was not in effect at the relevant time. Nevertheless, it argues that the fundamental principle embodied in § 558.031.4 – that an offender's sentence is suspended from the time of their escape from custody, until the time of their reapprehension – was applicable in Missouri as a matter of common law, even prior to the statute's enactment. As an example of the general acceptance of this escape-suspends-sentence principle, the State cites to *Anderson v. Corall*, 263 U.S. 193 (1923), in which the Supreme Court of the United States stated as a general rule that "[e]scape from prison interrupts service, and the time elapsing between escape and retaking will not be taken into account or allowed as a part of the term." *Id.* at 196.

There are at least three fundamental problems with the State's argument that the escape-suspends-sentence principle found in § 558.031.4, RSMo 1978 was applicable before the statute became effective. First, the State concedes that no Missouri decision had applied or even recognized the escape-suspends-sentence principle prior to the enactment of § 558.031.4, RSMo 1978.

Second, the State's argument is inconsistent with the general rule that we should presume that the General Assembly's enactment of § 558.031.4, RSMo 1978 was intended to alter existing law.

> The legislature is presumed to know the state of the law and to pass only those statutes which have some effect or purpose, and the legislature is presumed to have intended a change in existing law by enacting new statutes.

*State ex rel. Office of Pub. Counsel v. Mo. Pub. Serv. Comm'n*, 331 S.W.3d 677, 690 (Mo. App. W.D. 2011) (citations and internal quotation marks omitted); *see also, e.g.*, *Rasmussen v. Illinois Cas. Co.*, 628 S.W.3d 166, 176 (Mo. App. W.D. 2021)

---

[4] The effective date provision can be found in S.B. 60, 79th Gen. Assembly, 1st Reg. Session § A, 1977 MO. LAWS 658, 718.

11

("'[w]hen the legislature amends a statute, it is presumed that its intent was to bring about some change in the existing law'"; quoting *Rinehart v. Laclede Gas Co.*, 607 S.W.3d 220, 227 (Mo. App. W.D. 2020)). By arguing that § 558.031.4, RSMo 1978 merely codified a preexisting (but unstated) principle of Missouri common law, the State robs the statute of any substantive effect – a result we should generally avoid.

But the most serious flaw in the State's advocacy of a common law escape-suspends-sentence principle is that it is inconsistent with another Missouri statute, which _was_ in effect at the relevant time. Section 544.160, RSMo 1969 specifically addressed the escape of offenders from DOC custody, and the circumstances in which an escapee could be reapprehended. It provided:

> If any person sentenced to imprisonment in a county jail or in the penitentiary on a conviction for a criminal offense shall escape, he may be pursued, retaken, and imprisoned again, *notwithstanding the term for which he was sentenced to be imprisoned may have expired at the time he is retaken*, and remain so imprisoned until tried for such escape, or until he be discharged by a failure to prosecute therefor.

§ 544.160, RSMo 1969 (emphasis added). A similar provision has been in effect in Missouri since at least 1835, and has been a part of the Missouri statutes continuously since that time.[5]

The "notwithstanding" clause of § 544.160, RSMo 1969 plainly contemplates the possibility that "the term for which [an escapee] was sentenced" "may have expired" *while the escapee was at large.* An escapee's sentence could only expire subsequent to their escape, however, if the term of imprisonment continued to run despite the offender's escape. Section 544.160 provides that, if an escapee's

---

[5]     *See* Crimes and Punishments, art. V, § 42, RSMo 1835; ch. 47, art. V, § 42, RSMo 1845; ch. 50, art. V, § 45, RSMo 1855; ch. 203, § 45, RSMo 1865; § 1463, RSMo 1879; § 3711, RSMo 1889; § 2079, RSMo 1899; § 4390, RSMo 1909; § 3172, RSMo 1919; § 3924, RSMo 1929; § 4318, RSMo 1939; and § 544.160, RSMo 1949, RSMo 1959, RSMo 1969, RSMo 1978, RSMo 1986, RSMo 1994, RSMo 2000, and RSMo 2016.

12

sentence expires while the escapee is at large, the escapee may nonetheless be held pending their trial for the escape (or the failure to initiate such a prosecution).

If we adopted the common law escape-suspends-sentence principle which the State advocates, it would make the "notwithstanding" clause of § 544.160, RSMo 1969 meaningless: there would be <u>no</u> situation in which an escapee's sentence had "expired at the time he is retaken." We cannot adopt a common-law principle which would have the effect of nullifying a statutory provision which was actually in effect at the relevant time. Indeed, well-established law provides that statutes displace or supersede the common law to the extent of any inconsistency between them – not *vice versa*. *See*, *e.g.*, *Martinez v. Kilroy Was Here LLC*, 551 S.W.3d 491, 496 (Mo. App. E.D. 2018); *Sieg v. Int'l Envtl. Mgmt., Inc.*, 375 S.W.3d 145, 152 (Mo. App. W.D. 2012).

Even if a common law escape-suspends-sentence principle were in effect at the relevant time, it would not apply to deny Isreal credit for the entire forty years he was incarcerated in California. The State argues that the escape-suspends-sentence principle in effect at the relevant time would be generally consistent with the terms of § 558.031.4, RSMo 1978. That statute must be interpreted in light of the general principle that criminal statutes – including those statutes specifying when a sentence will run – "must be construed strictly against the state and liberally in favor of the defendant." *Goings v. Mo. Dep't of Corr.*, 6 S.W.3d 906, 908 (Mo. 1999) (interpreting the provisions of § 558.031, RSMo Cum. Supp. 1998 which specified when a defendant was entitled to "jail-time" credit).

Besides the principle that statutes like § 558.031.4, RSMo 1978 should be construed strictly against the State, in interpreting the statute "we 'should take into consideration statutes involving similar or related subject matter when those statutes shed light on the meaning of the statute being construed.'" *Henke v. Dir. of*

*Revenue*, 611 S.W.3d 564, 567 (Mo. App. E.D. 2020) (quoting *State v. Knapp*, 843 S.W.2d 345, 347 (Mo. 1992)).

At the relevant time, DOC was charged with a statutory duty to make a reasonable effort to recapture an escaped offender:

> Whenever an offender escapes, the division director shall take all proper measures for the apprehension of the offender and may pay a reward for his apprehension and delivery. The reward shall not exceed five hundred dollars and shall not apply to law enforcement officers or employees of the department.

§ 216.245, RSMo 1969 (now codified at § 217.395, RSMo 2016). Like § 544.160, § 216.245, RSMo 1969 has a long history in Missouri; it was initially enacted in 1917. *See* S.B. 298, 49th Gen. Assembly § 113, 1917 MO. LAWS 155, 183-84 (codified at § 12513, RSMo 1919).

The rule stated in § 558.031.4, RSMo 1978 (that an offender's sentence is suspended by escape, until the offender is returned to DOC custody), must be interpreted in light of the DOC's statutory obligation under § 216.245, RSMo 1969 to "take all proper measures," including the payment of a reward, to secure the offender's return.

In this case, the State was aware of Isreal's location throughout the forty-year period while he was incarcerated in California, and California repeatedly offered to return Isreal to Missouri so that he could resume service of the sentences from which he had escaped. Isreal himself filed multiple court proceedings to try to force Missouri to accept him back. Yet, despite its statutory obligation to "take all proper measures" to secure the apprehension and return of escaped offenders, and despite the fact that DOC apparently had an *ad hoc* procedure under which it could choose to accept custody of such offenders, Missouri officials steadfastly refused to accept Isreal's return for forty years. It is difficult to square the actions of DOC

14

officials with the Department's obligation to "take all proper measures for the apprehension of" escapees under § 216.245, RSMo 1969.

The State argues that DOC acted consistently with § 216.245, RSMo 1969, because the statute only required that the agency secure Isreal's "apprehension," but not his actual *return* to DOC custody. We are unpersuaded. The statute plainly contemplates that DOC will either "apprehen[d]" an escapee, or reward third parties for the escapee's "apprehension *and delivery*." The statutory duty is not fully discharged until an escapee is returned to DOC custody.

The DOC is charged with *executing* sentences imposed by the courts, not with *imposing* sentence in the first instance. In this case, allowing DOC to decide, on an *ad hoc* basis, not to accept Isreal's return would essentially give it the unilateral right to dictate when the running of his sentence would resume, and therefore the total length of his sentence. As the Ninth Circuit observed in Isreal's federal habeas corpus proceeding, "Missouri's refusal to accept custody effectively renders [Isreal's] California and Missouri sentences consecutive." 125 F.3d at 839. The DOC's actions would have the effect of converting what would otherwise be a total sentence of 40+ years, into a sentence of 60+ years. The Missouri Supreme Court held in *Jackson v. Kaiser*, 185 S.W.2d 784 (Mo. 1945), that:

> "A prisoner has some rights. A sentence of five years means a continuous sentence, unless interrupted by escape, violation of parole, or some fault of the prisoner, and he cannot be required to serve it in installments."

*Id.* at 787 (quoting *White v. Pearlman*, 42 F.2d 788, 789 (10th Cir. 1930)); *see also Anderson v. Crawford*, 309 S.W.3d 863, 868-69 (Mo. App. W.D. 2010). *Jackson* states that the prohibition on service of a sentence by installments is inapplicable where the sentence is "interrupted by escape." But in this case, by 1980 Isreal was affirmatively seeking to be returned to Missouri, and was hardly engaged in an ongoing "escape." Under § 216.245, RSMo 1969, and under the principle recognized

in *Jackson*, DOC could not arbitrarily deny Isreal the right to resume service of his sentence.

The United States Court of Appeals for the Eighth Circuit faced a similar situation in *Chitwood v. Dowd*, 889 F.2d 781 (8th Cir. 1989). In *Chitwood*, an offender (Chitwood) was first sentenced to a term of imprisonment in the Oklahoma state courts. *Id.* at 782. Chitwood escaped from Oklahoma custody, fled to Missouri, and was then convicted of additional felonies in Missouri. *Id.* Missouri circuit courts sentenced Chitwood to further terms of imprisonment, but specified that his sentences would run concurrently to his Oklahoma sentence. *Id.*

Chitwood repeatedly requested that DOC return him to Oklahoma so that he could resume service of his Oklahoma sentence (and his concurrent Missouri sentences). *Id.* In addition, Oklahoma correctional officials wrote to DOC to indicated their "willingness to receive Chitwood back into custody." *Id.* Despite Chitwood's requests, and Oklahoma's willingness to accept his return, DOC failed to effect his transfer. *Id.* After pursuing other avenues of relief, Chitwood filed a habeas corpus action in the federal court.

The Eighth Circuit held that Chitwood was entitled to habeas relief, because "Missouri state officials have disregarded, if not deliberately, at least negligently, the rights of a prisoner who sought the proper execution of his sentence." *Id.* at 785. The Court explained:

> A Missouri court's sentence has meaning only if the Department of Corrections has the duty to execute the sentences according to the court's instructions. The courts are given the authority to sentence defendants, not the Missouri Department of Corrections. Chitwood's sentence implicitly requires that Chitwood be transferred to Oklahoma, for that is the only course of action that will ensure that the Oklahoma sentence will run concurrently with the Barry County sentence.
>
> . . . .

16

. . . [T]he Department of Corrections had a duty to execute the sentence of the Barry County circuit court, and . . . the court had the authority to sentence Chitwood to serve his Barry County sentence concurrently with his Oklahoma sentence in Oklahoma.

. . . .

. . . Under Missouri statute, the discretion to sentence the defendant is vested in the trial court. One element of that discretion is found in section 558.026.3[, RSMo, which permits the court to order that a Missouri sentence run concurrently to an out-of-state sentence]. When the trial court exercises its discretion under the statute, a defendant has a legitimate expectation that he will be deprived of his liberty only to the extent determined by the court. That expectation is a liberty interest, protected by due process and enforceable by way of habeas corpus.

*Id.* at 786.

At the time of Isreal's underlying offenses and convictions, and at the time of his escape, Missouri had no rule providing that his escape suspended the running of the sentences he was then serving. Even if Missouri had such a rule, that rule would not continue to suspend Isreal's sentences after DOC repeatedly and arbitrarily refused to accept his transfer back to Missouri custody, in derogation of its statutory obligation to promptly secure Isreal's return. DOC did not have the authority to arbitrarily decide whether Isreal's Missouri and California sentences would be served concurrently or consecutively. As *Chitwood* held, "[t]he courts are given the authority to sentence defendants, not the Missouri Department of Corrections." 889 F.2d at 786. The circuit court correctly held that Isreal's Missouri sentences expired while he was incarcerated in California, and that he was entitled to be immediately discharged from Missouri custody.[6]

---

[6] The State argues that certain statements made by the circuit court at the hearing on Isreal's habeas petition reflect a misinterpretation of the law. Even if the circuit court's oral statements were incorporated into its later written judgment, "this Court is 'primarily concerned with the correctness of the [circuit] court's result, not the route taken by the [circuit] court to reach that result.'" *City of Crestwood v. Affton Fire Protection Dist.*, 620 S.W.3d 618, 623 (Mo. 2021) (citation omitted). Accordingly, we will uphold the circuit court's judgment "'if it is correct on any ground supported by the record, regardless of

## Conclusion

We refuse to quash the record of the circuit court's habeas proceeding.

_____
Alok Ahuja, Judge

All concur.

---

whether the trial court relied on that ground.'" *Curtis v. Mo. Democratic Party*, 548 S.W.3d 909, 918 (Mo. 2018) (citation omitted).